[No. B088292. Second Dist., Div. One. July 31, 1997.]

SOUTH BAY SENIOR HOUSING CORPORATION, Plaintiff and Respondent, v.
CITY OF HAWTHORNE, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II and III.

COUNSEL

Parker, Milliken, Clark, O'Hara & Samuelian and Michael M. Mullins for Defendant and Appellant.

Stephenson & Stephenson and Michael M. Stephenson for Plaintiff and Respondent.

## OPINION

**VOGEL (Miriam), J.**—In the published portion of this opinion, we hold that when a statute limits a general law city's power to make a certain kind of contract to a certain prescribed method, thereby implicitly prohibiting other methods of contracting, a contract that does not conform to the prescribed method is void and the city cannot be liable on an implied contract theory for the benefits it received or the damage it caused to the other party to the void contract. In the unpublished portion of this opinion, we hold that substantial evidence supports the jury's finding that the contract at issue was signed as required by law. We affirm the jury's determination of liability, reverse the award of damages, and remand with directions.

FACTS

South Bay Senior Housing Corporation, a developer of low-income senior citizen housing, contacted the City Manager of the City of Hawthorne to express interest in a certain City-owned parcel of land for the construction of a new senior citizen facility. When South Bay's president (Irving Sokolsky, M.D.) was told that a deed restriction precluded a sale but that the property was available for lease, Sokolsky said he was still interested, and he was later told that a lease to South Bay for a senior citizen housing development would be favorably considered by the City. Sokolsky drafted a proposed 55-year ground lease and a development agreement, submitted them to the City, met with the City's outside legal counsel, twice amended the documents, and ultimately signed the originals and sent them to the City Manager. At the City Council's April 9, 1990 meeting, at which the Mayor was

present and voted, the lease and development agreement were unanimously approved by roll call vote.

Sokolsky thereafter drafted construction plans and submitted permit applications, including one to the City's Planning Commission for an unclassified use permit required under the Hawthorne Municipal Code for South Bay's proposed use of the property. In May, the City's Planning Commission unanimously approved South Bay's application for the permit. In the fall, South Bay erected a fence around the property. At some point, however, South Bay's previously approved permit application was referred by the City Council back to the Planning Commission for further review, and there the permit sat, while Sokolsky's repeated requests for action were ignored. At the same time, the City acted as though it had a deal with South Bay. In mid-1991, for example, the City billed South Bay for weed abatement services for the "leased" property and accepted South Bay's payment of the bill. Around the same time, the City Manager corresponded with a constituent who lived near South Bay's project, advising her that South Bay was the lessee of the property and was going to build low-income senior housing on the property. But the permit was still pending before the Planning Commission, notwithstanding Sokolsky's continuing efforts to move forward with the project—he met with the City Manager, the City Attorney and individual members of the City Council to try to find out whether there was a problem and, if there was, what he could do about it, but no action was taken. Ultimately, South Bay sued the City for anticipatory breach of contract, rescission and restitution.

At trial to a jury, the parties presented detailed evidence of the facts summarized above. Among other issues, there was a dispute about whether the Mayor had ever signed South Bay's lease and development agreement and, if not, whether the City Council's approval was sufficient to form a contract. Neither party produced the original contract documents and the copies that were produced were signed only by Sokolsky. Hawthorne's City Attorney (Steven Michael Adamson) testified that he had no specific recollection about this contract, but explained that the City's usual custom and practice was to have him review a proposed contract before it was submitted to the City Council for a vote, and that the City Council would not vote on a contract unless it had been reviewed and approved as to form by Adamson. Thus, said Adamson, the fact that the City Council did approve South Bay's contract meant he must have approved the documents as to form and signed them. Adamson also testified that, in the usual course of events, the Mayor would have signed the contract immediately after the City Council's vote or the next day or at the Mayor's earliest convenience, and the contract then

would have been placed in the custody of the City Clerk. There was no evidence to the contrary.

The jury found in favor of South Bay and awarded it damages of slightly more than $1 million, which was reduced by the trial court to $719,000. The City appeals.

DISCUSSION

I.

The City contends there is no enforceable contract unless the Mayor signed the contract. We agree.

A city's power to enter a contract is governed by statute. (Gov. Code, § 34000 et seq.)[1] When a city is given the *general power to contract with reference to a subject matter* and an express contract it has entered pursuant to that general power is rendered invalid because of an irregularity in its execution and not because it is violative of any statutory restriction, the city may be held liable on an implied contract theory for the benefits it received under such a contract. But *when a statute limits a city's power to make certain contracts to a certain prescribed method and impliedly prohibits any other method*, a contract that does not conform to the prescribed method is void and no implied liability can arise for benefits received by the city or for damages caused by it to the other party to the void contract. (*Miller v. McKinnon* (1942) 20 Cal.2d 83, 91-92 [124 P.2d 34, 140 A.L.R. 570].) " 'Under such circumstances the express contract attempted to be made is not invalid merely by reason of some irregularity or some invalidity in the exercise of a general power to contract, but the contract is void because the statute prescribes the only method in which a valid contract can be made, and the adoption of the prescribed mode is a jurisdictional prerequisite to the exercise of the power to contract at all and can be exercised in no other manner so as to incur any liability on the part of the municipality. Where the statute prescribes the only mode by which the power to contract shall be exercised the *mode* is the *measure* of the power. A contract made otherwise than as so prescribed is not binding or obligatory as a contract and the doctrine of implied liability has no application in such cases.' " (*Ibid.*, quoting *Reams v. Cooley* (1915) 171 Cal. 150, 154 [152 P 293].)

We reject South Bay's contention that this rule does not apply here because the City of Hawthorne is not a chartered city. Cities are either

---

[1]Unless otherwise stated, all section references are to the Government Code.

"chartered cities" (cities organized under a charter) or "general law cities" (cities organized under the general law of this state). (§§ 34100, 34101, 34102.) The City of Hawthorne is a general law city and, as such, it must comply with a two-step process to enter the contract here at issue. First, a lease of city-owned land must be approved by the City Council (the City's legislative body). (§§ 34000, 37351, 37380, subd. (a).) Second, unless the City Council otherwise "provide[s] by ordinance," all contracts and conveyances made by the City "shall" be signed by the mayor or, in his absence, the mayor pro tempore. (§§ 40601, 40602.) In this context, "shall" is mandatory. (§ 14.) Since it is undisputed that the City of Hawthorne has not "provide[d otherwise] by ordinance," its contracts—including South Bay's lease and development plan—had to be signed by the Mayor.

It follows that, by the plain language of the statutes, the City's power to make a contract is limited to the prescribed method and, by necessary implication, that any other method is prohibited—which means that, unless it was signed by the Mayor, the contract with South Bay is void and no implied liability can arise under that contract. (*Miller* v. *McKinnon, supra,* 20 Cal.2d at pp. 91-92.) South Bay's suggestion that the result ought to be otherwise because the City of Hawthorne is a general law city finds no support in law or logic. To begin with, *Miller* involved a county, not a city, and it applies by its terms to all municipalities. (*Id.* at pp. 92-94.) Moreover, although it is true as South Bay contends that the issue before us has not been the subject of any published opinion involving a general law city (all of the cases involved chartered cities or other governmental entities), our response is, so what? The cases involving chartered cities apply the rule of *Miller* to the city's charter in the same way we apply it here to the general law governing a general law city. (E.g., *Frick* v. *City of Los Angeles* (1896) 115 Cal. 512, 514-516 [47 P. 250] [where a charter requires approval by the city council and signature by the mayor or other authorized person, a contract that was not signed by the mayor cannot be enforced]; *Dynamic Ind. Co.* v. *City of Long Beach* (1958) 159 Cal.App.2d 294, 298-299 [323 P.2d 768] [where a charter requires approval by the city council and signature by the city manager or other authorized person, there is no valid contract if it is not signed by an authorized person and "[t]he fact that [the other party] expended a substantial sum in reliance upon the [city council's] resolution is immaterial in view of the charter limitation"]; *McCann* v. *City of Los Angeles* (1978) 79 Cal.App.3d 112, 118-119 [144 Cal.Rptr. 696].)

We hold, therefore, that South Bay's contract is not enforceable unless it was signed by the mayor.

II., III.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The judgment is affirmed insofar as it finds the City liable to South Bay for breach of contract, but the award of damages is reversed and the cause is remanded to the trial court with directions to recalculate the amount of damages, if possible, and enter an amended judgment in that amount, to bear interest at the rate of 7 percent from the date of the original judgment; if such recalculation is not possible, the trial court shall specify which damages issues are to be retried, re-try those issues, and enter a new judgment. The parties are to pay their own costs of appeal.

Spencer, P. J., and Masterson, J., concurred.

A petition for a rehearing was denied August 19, 1997, and appellant's petition for review by the Supreme Court was denied October 22, 1997.

*See footnote, *ante*, page 1231.