[No. A085136. First Dist., Div. Two. Mar. 3, 2000.]

G. L. MEZZETTA, INC., Plaintiff and Appellant, v.
CITY OF AMERICAN CANYON, Defendant and Respondent.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II.B., III and IV.

COUNSEL

Lukens and Drummond and Donald F. Drummond for Plaintiff and Appellant.

Law Offices of William D. Ross, William D. Ross, Lisabeth D. Rothman and Barbara J. Higgins for Defendant and Respondent.

## OPINION

**KLINE, P. J.**—G. L. Mezzetta, Inc. (Mezzetta) sued the City of American Canyon (City) for breach of oral and written contract, inverse condemnation, and civil rights violations after the City allegedly failed to honor its agreement to provide Mezzetta with a connection to a wastewater discharge system that could accept Mezzetta's high salinity wastewater. The trial court ultimately sustained the City's demurrers without leave to amend as to all causes of action and Mezzetta now challenges the trial court's rulings. In the published portion of this opinion, we shall affirm the trial court's order as to the oral contract cause of action because we find that the relevant statutory provisions preclude the City from entering into oral agreements. In the unpublished portion of this opinion, we shall affirm the trial court's order as to all other causes of action.

### FACTUAL BACKGROUND

The facts pleaded in Mezzetta's complaint and first amended complaint are as follows. Mezzetta is a leading producer of pickled and roasted

peppers, olives, and condiments. Mezzetta moved its processing plant to the City based on a 1995 agreement—primarily verbal—between Mezzetta and the City's manager and public works director, pursuant to which the City agreed to provide Mezzetta with a connection to a wastewater discharge system by October 1997 that was capable of accepting Mezzetta's high salinity wastewater. Although at the time of the agreement, the City was utilizing the services of the Napa Sanitary District (Napa) for both domestic and industrial wastewater discharge, the City represented that it had contracted with the Vallejo Sanitation and Flood Control District (Vallejo), which would accept higher levels of salinity than could Napa and at a more economic rate, to provide wastewater treatment for the City after February 1997.

The City agreed that Mezzetta's industrial wastewater connection, with fees not to exceed $50,000 for up to 26,000 gallons of pretreated wastewater discharge with a salinity level of up to 20,000 milligrams per liter, would be accomplished by one of the following methods: "(1) connection to the Vallejo Sanitation District, with which the City then had a contract to accept wastewater discharge, including wastewater with salinity levels in excess of 2%; (2) timely construction of the City's own wastewater treatment plant, which would accept Mezzetta's discharge; and/or (3) service could be provided through [Napa] by producing sufficient dilution that Mezzetta's discharge would be acceptable to [Napa]."

In September 1997, after Mezzetta had purchased property, obtained the necessary permits, and commenced operations, Mezzetta learned that the City had rejected the contract with Vallejo and intended to attempt to obtain approval and financing for its own wastewater discharge system, which might be able to accept Mezzetta's discharge, but which would not be available for hookup until at least the fall of 1999.

PROCEDURAL BACKGROUND

On March 18, 1998, Mezzetta filed its original complaint for damages against the City alleging six causes of action including breach of written contract; breach of oral contract, estoppel, and ratification; three causes of action for inverse condemnation; and civil rights violations. On June 18, 1998, the trial court sustained the City's demurrer without leave to amend as to the inverse condemnation causes of action, finding that Mezzetta did not have any legally recognized vested right that could support those causes of action, that Mezzetta's discharge plan was not "property," and that Mezzetta's reasonable investment-backed expectations were not substantially interfered with. The court also sustained a demurrer to the civil rights violation

cause of action without leave to amend, finding that the City's decision regarding the Vallejo contract was rationally related to the legitimate government interest in discharging wastewater.

In addition, the trial court sustained the demurrer, with leave to amend, as to the written contract cause of action, finding that Mezzetta should have the opportunity to attempt to state a cause of action for breach of contract, which pleading would include a copy of the written contract or recitation of the contract in haec verba. Finally, the court sustained, also with leave to amend, the oral contract, estoppel, and ratification cause of action, finding that Mezzetta should have the opportunity to attempt to state such a cause of action, which pleading would be sufficiently specific to withstand a demurrer for vagueness.[1]

On July 7, 1998, Mezzetta filed a first amended complaint for damages, alleging two causes of action, including (1) breach of written contract and (2) breach of oral contract, promissory estoppel, and ratification. On October 8, 1998, the trial court sustained the City's demurrer without leave to amend as to both causes of action. On October 26, 1998, the trial court entered an order dismissing the first amended complaint. Mezzetta filed a notice of appeal on November 20, 1998, and an amended notice of appeal on December 2, 1998.

## DISCUSSION

### I.  *Standard of Review*

"A demurrer tests the legal sufficiency of the complaint, and the granting of leave to amend involves the trial court's discretion. Therefore, an appellate court employs two separate standards of review on appeal. [Citations.] First, the complaint is reviewed de novo to determine whether it contains sufficient facts to state a cause of action. [Citation.] In doing so, we accept as true the properly pleaded material factual allegations of the complaint, together with facts that may be properly judicially noticed. Reversible error exists only if facts were alleged showing entitlement to relief under any possible legal theory. [Citations.] [¶] Second, where the demurrer is sustained without leave to amend, reviewing courts determine whether the trial court abused its discretion in doing so. [Citations.] On review of the trial court's refusal to grant leave to amend, we will only

---

[1]Following the trial court's June 18, 1998, order, Mezzetta filed with this court a writ of mandate seeking to overturn the trial court's decision sustaining the City's demurrer without leave to amend as to one of the inverse condemnation causes of action. On September 24, 1998, we denied the writ of mandate without prejudice as premature.

reverse for abuse of discretion if we determine there is a reasonable possibility the pleading can be cured by amendment. Otherwise, the trial court's decision will be affirmed for lack of abuse. [Citations.]" (*Hernandez v. City of Pomona* (1996) 49 Cal.App.4th 1492, 1497-1498 [57 Cal.Rptr.2d 406].)

## II. *Contract Causes of Action*

The Government Code classifies cities as either "general law cities" (cities organized under the general law of California) or "chartered cities" (cities organized under a charter). (Gov. Code, §§ 34100, 34101, 34102;[2] see also *First Street Plaza Partners v. City of Los Angeles* (1998) 65 Cal.App.4th 650, 660 [76 Cal.Rptr.2d 626]; *South Bay Senior Housing Corp. v. City of Hawthorne* (1997) 56 Cal.App.4th 1231, 1235-1236 [66 Cal.Rptr.2d 99].) ■ The powers of a general law city include " 'only those powers expressly conferred upon it by the Legislature, together with such powers as are "necessarily incident to those expressly granted or essential to the declared object and purposes of the municipal corporation." The powers of such a city are strictly construed, so that "any fair, reasonable doubt concerning the exercise of a power is resolved against the corporation." [Citation.]' [Citations.]" (*Martin v. Superior Court* (1991) 234 Cal.App.3d 1765, 1768 [286 Cal.Rptr. 513].) ■ The City is a general law city and, as such, it must comply with state statutes that specify requirements for entering into contracts. (See § 34000 et seq.; *South Bay Senior Housing Corp. v. City of Hawthorne, supra,* 56 Cal.App.4th at pp. 1235-1236.) "A contract entered into by a local government without legal authority is 'wholly void,' ultra vires, and unenforceable." (*Midway Orchards v. County of Butte* (1990) 220 Cal.App.3d 765, 783 [269 Cal.Rptr. 796], quoting *Dynamic Ind. Co. v. City of Long Beach* (1958) 159 Cal.App.2d 294, 299-300 [323 P.2d 768].)

The parties cite one Government Code section and two of the City's Municipal Code provisions as relevant to the question of what type of contracts the City has the power to enter into. First, section 40602 provides in relevant part: "The mayor shall sign: [¶] . . . [¶] (b) All written contracts and conveyances made or entered into by the city. [¶] . . . [¶] The legislative body may provide by ordinance that the instruments described . . . be signed by an officer other than the mayor." Municipal Code section 2.08.060, which sets forth the powers and duties of the city manager, provides in relevant part that the city manager "shall be expected to, and shall have the power to: [¶] . . . [¶] M. Have the same authority as the mayor (as conveniences to the parties may dictate) to sign documents specified in Section 40602 . . . whenever such documents have been approved by the council for execution by resolution, motion, minute order or

---

[2]All further statutory references are to the Government Code unless otherwise indicated.

other appropriate action . . . ." Finally, section 2.20.030 of the Municipal Code provides in relevant part: "The functions of the office of the city attorney shall be to: [¶] . . . [¶] C. Prepare and/or approve all ordinances, resolutions, agreements, contracts, and other legal instruments as shall be required for the proper conduct of the business of the city and approve the form of all contracts and agreements and bonds given to the city . . . ."

## A.  *Oral Contract*

█  Mezzetta contends the trial court erred in finding that Mezzetta failed to state a cause of action for breach of an oral contract. According to Mezzetta, nothing in the three relevant Government and Municipal Code sections precludes the City from entering into and being bound by an oral contract. That, he contends, is because Government Code section 40602 requires only that *written* contracts be signed by the mayor and Municipal Code section 2.08.060M merely gives the city manager the authority to sign those written contracts that have been approved by the city council. Finally, Mezzetta asserts that Municipal Code section 2.20.030C simply describes the functions of the city attorney, including preparation of contracts "as shall be required for the proper conduct of the business of the city . . . ." Mezzetta asserts that if the Legislature had intended to require that all contracts involving municipalities be in writing, it would have so specified in section 40602, as the City would have done in its Municipal Code had it intended that only written contracts be permitted.

We do not find Mezzetta's argument persuasive. On the contrary, we agree with the City that implicit in the relevant statutes, when read together, is the requirement that contracts with the City be in writing, approved by the city council, approved as to form by the city attorney, and signed by either the mayor or the city manager. (See Gov. Code, § 40602; City Mun. Code, §§ 2.08.060M, 2.20.030C.) Although the City could have been more explicit about its requirement that all contracts be in writing, nonetheless, the terms of the three statutory provisions in question, particularly Municipal Code section 2.20.030C, make clear the City's intent that all contracts it enters into be in writing. (See 10 McQuillin, Municipal Corporations (3d ed. 1999 rev.) § 29.05, p. 255 [reciting rule that restrictions on a municipality's power to contract should be strictly construed because such restrictions are designed to protect the public, not those who contract with the municipality]; see also *Martin v. Superior Court, supra,* 234 Cal.App.3d at p. 1768 [powers of a general law city are strictly construed, so that " ' "any fair, reasonable doubt concerning the exercise of a power is resolved against the corporation." [Citation.]' [Citations.]"].)

Thus, because the statutes in question specifically set forth the ways in which the City may enter into contracts, any other methods of contract

formation—even though not explicitly prohibited by the statutes—are invalid. (See, e.g., *Gikas v. Zolin* (1993) 6 Cal.4th 841, 852 [25 Cal.Rptr.2d 500, 863 P.2d 745] ["The expression of some things in a statute necessarily means the exclusion of other things not expressed."]; *First Street Plaza Partners v. City of Los Angeles, supra,* 65 Cal.App.4th at p. 664, fn. 10 [While the city's charter did not forbid contract formation in a manner other than as specified in the charter, permitting such formation would render the contract requirements in the charter "a complete nullity"]; *South Bay Senior Housing Corp. v. City of Hawthorne, supra,* 56 Cal.App.4th at p. 1235 ["[W]hen a statute limits a city's power to make certain contracts to a certain prescribed method and impliedly prohibits any other method, a contract that does not conform to the prescribed method is void and no implied liability can arise for benefits received by the city or for damages caused by it to the other party to the void contract." (Italics omitted.)].)[3] To conclude otherwise would undermine the City's clear intent to " 'ensure that expensive decisions are not hastily made. [These statutes] create[] a broad base of authority by requiring [contract] approval by a number of different individuals. No single individual has absolute authority to bind the municipality; many parts of the city government must work together.' " (*First Street Plaza Partners v. City of Los Angeles, supra,* 65 Cal.App.4th at p. 669; see also *San Francisco Internat. Yachting etc. Group v. City and County of San Francisco* (1992) 9 Cal.App.4th 672, 680 [12 Cal.Rptr.2d 25].)

■■ ▬■ Finally, with respect to Mezzetta's claims of estoppel and ratification, neither doctrine may be invoked to enforce a void contract. (*Miller v. McKinnon* (1942) 20 Cal.2d 83, 91-92 [124 P.2d 34, 140 A.L.R. 570].)[4]

For these reasons, we find the trial court properly sustained the City's demurrer without leave to amend as to the cause of action alleging breach of an oral contract.

---

[3]*South Bay Senior Housing Corp. v. City of Hawthorne, supra,* 56 Cal.App.4th 1231 involved a written contract between a general law city and a private party. The appellate court held that for the contract to be valid under section 40602, it must have been signed by the mayor. (*South Bay Senior Housing Corp., supra,* at p. 1236.) Since that case dealt only with the validity of a written contract, the court had no reason to address the question now before us.

[4]Applicable to this situation is the well-settled general rule that "one who makes a contract with a municipal corporation is bound to take notice of limitations on its power to contract and also of the power of the particular officer or agency to make the contract." (10 McQuillin, Municipal Corporations, *supra,* § 29.04, p. 249; cf. *Miller v. McKinnon, supra,* 20 Cal.2d at p. 89.)

## B. *Written Contract**

. . . . . . . . . . . . . . . . . . . . . . . . . . .

## III., IV.*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The order of dismissal is affirmed. Costs on appeal to the City.

Haerle, J., and Ruvolo, J., concurred.

---

*See footnote, *ante*, page 1087.