Filed 5/20/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| TAMMY GONG et al., | B247601 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC487865) |
| v. | |
| CITY OF ROSEMEAD, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Abraham Khan, Judge. Affirmed.

Mohammed K. Ghods, William A. Stahr, Jeremy A. Rhyne and Ruben Escobedo for Plaintiffs and Appellants.

Burke, Williams & Sorenson, Brian A. Pierik, Rachel H. Richman and Keiko J. Kojima for Defendant and Respondent.

Appellants Tammy Gong ("Gong") and L&G Rosemead Garden LLC ("L&G") (Gong and L&G are jointly referred to as "appellants") seek to impose liability on the City of Rosemead (the "City") for the alleged tortious conduct of John Tran ("Tran"), a former member of its City Council and former mayor of the City. Appellants allege that while L&G's proposed real estate project was proceeding through the City's approval process, Tran, the City's mayor, "extracted" $38,000 in "loans" from Gong, refused to repay her, and then set about a retaliatory course of conduct to prevent the approval of L&G's development project, after Gong refused to provide Tran with additional funds and continuously rejected his sexual overtures. Gong also alleged that Tran physically assaulted her and threatened to kill her. The trial court sustained, without leave to amend, the City's demurrer and granted its motion to strike the complaint, and entered a judgment of dismissal, from which appellants appeal.

We determine that, contrary to appellants' contention, their claims were subject to the claim presentation requirements and the immunity provisions of the Government Tort Claims Act. Because they failed to satisfy the claim presentment requirements of the Act with respect to their causes of action for fraud and extortion, assault and battery, and intentional infliction of emotional distress, and because the City is immune from their promissory estoppel claim, the trial court properly sustained the City's demurrer. We therefore affirm the judgment.

FACTUAL AND PROCEDURAL SUMMARY

We draw the facts from the allegations in the complaint, which we accept as true, except when contradicted by exhibits to the complaint or documents of which the court has taken judicial notice. (*Tucker v. Pacific Bell Mobile Services* (2012) 208 Cal.App.4th 201, 210.)

Gong is the managing partner of L&G. The City is a general law city incorporated in the County of Los Angeles. The City's policymaking and legislative authority are vested in a governing council consisting of the mayor and four other members ("City Council"). The City Council conducts business through various agencies, including the

2

Rosemead Community Development Commission and the Rosemead Planning Commission.

In or around 2004, L&G spent approximately $780,000 to acquire certain undeveloped land commonly known as 9400-9412 Valley Boulevard in the City of Rosemead, California ("Original Parcel"). The Original Parcel was approved by the City for construction of a 7,200 square-foot office building ("Original Plan.")

In 2005, Gong went to City Hall to draw the building permit for the Original Plan so that L&G could commence construction on the Original Parcel in accordance with the plan. Tran approached Gong in the parking lot and started a conversation with her about the bulky documents she was carrying. As a result of this casual conversation, Tran learned about the Original Plan and escorted Gong into City Hall, where he questioned her about the Plan.

Tran suggested that the City would support the Original Plan if Gong would instead construct a mixed-use building on the Original Parcel ("City Endorsed Plan"). As a result of her encounter with Tran, Gong did not draw the permit for the Original Development Plan, which she had intended to do before meeting Tran.

City officials contacted Gong at the request of Tran to schedule a meeting to discuss the City Endorsed Plan. Gong was advised that in order to proceed with the City Plan, L&G needed to acquire a lot adjoining the Original Parcel (the "Additional Parcel").

Tran, who was a licensed real estate agent, represented to Gong that he had substantial knowledge and experience with real estate transactions and Gong should trust his professional judgment. The actions of other City Council members, officers, agents, and employees of the City lulled Gong into a false sense of security that Tran was trustworthy and that she should follow Tran's instructions and directions in connection with her real estate development plans.

After meeting with Tran and other officials of the City, Gong was convinced to proceed with the City Endorsed Plan. Accordingly, applications for a preliminary design

3

review were prepared for the City Endorsed Plan and with the City's assistance, efforts were made by L&G to acquire the Additional Parcel.

On or about April 10, 2007, the Rosemead Community Development Commission placed the City Endorsed Plan on the City's list of major mixed-use projects and gave L&G preliminary design approval. Soon thereafter, in reliance on the preliminary design approval and repeated and consistent assurances that the City would ensure speedy approval of the City Endorsed Plan, L&G agreed to acquire the Additional Parcel for approximately $700,000. Soon thereafter, L&G prepared and submitted applications for a general plan amendment, zone change, design review, and conditional use permit to proceed with construction of the City Endorsed Plan.

While L&G's applications were pending, Tran asked Gong for personal loans due to a purported family emergency and for other reasons. Ultimately, she loaned Tran a total of $38,000. Subsequently, Gong realized that Tran had no intention of repaying the loans and she ceased lending him money.

Also during this time frame, Tran approached Gong seeking to engage her in a romantic relationship. Gong informed Tran that she was not interested, but that did not deter him. When she continued to repel his overtures, Tran commenced a retaliatory course of conduct against Gong, which included causing the final decision on the City Endorsed Plan to be indefinitely tabled. Gong still refused additional financial and romantic overtures from Tran and demanded the return of her money. Tran refused to do so, and threatened to kill her if she reported him to the authorities.

On December 22, 2011, appellants filed a claim[1] with the City (the "First Claim"), alleging the following factual basis for their claims against the City: "Description of

---

[1] The court may take judicial notice of the filing and contents of a government claim, but not the truth of the claim. (See Evid. Code, § 452, subd. (c); *Ludwig v. Superior Court* (1995) 37 Cal.App.4th 8, 14.) The record on appeal does not reflect the trial court's ruling on the City's request to take judicial notice of the government claims filed by appellants. This court takes judicial notice of appellants' two claims. (Evid. Code, § 452, subd. (c).) We also take judicial notice of the legislative history of § 815.3 as requested by appellants.

4

incident/accident that caused you to make this claim: Prior City Managers & Employees made me [] purchase this property to build Mix Use Project. This purchase was completed in 2009. I went through all plan check and John Tran kept delaying me from continu[ing]. Now the City told me that I cannot build it anymore because City Council changed and Policy changed too." By letter dated January 18, 2012, the City notified appellants that the claim had been rejected. On March 22, 2012, appellants filed another claim (the "Second Claim") with the City, alleging essentially the same facts as the first claim. The City notified appellants that the Second Claim had been rejected by letter dated April 25, 2012.

Gong felt threatened and fearful for her life and safety, and so contacted the Federal Bureau of Investigations ("FBI") for assistance. At the request of the FBI, Gong agreed to withhold filing a lawsuit against Tran until the FBI finished its investigation. On or about March 20, 2012, Tran pled guilty to federal charges of extortion and fraud.[2] Appellants then initiated the present lawsuit on July 6, 2012.

The complaint alleges causes of action against Tran for money lent; against the City for promissory estoppel and "pursuant to" Government Code 815.3; and for fraud and extortion, assault and battery, and intentional infliction of emotional distress against both Tran and the City.

The City demurred to the complaint on multiple grounds. Specifically, the City contended that the causes of action for fraud and extortion, assault and battery, and intentional infliction of emotional distress were barred due to appellants' failure to submit a timely claim pursuant to Government Code section 900 et seq. Furthermore, the City maintained that the third cause of action, based on Government Code section 815.3, failed because that section does not form the basis of a separate cause of action, and that

---

[2]     On December 3, 2012,Tran entered into an agreement with the United States Attorney whereby he was allowed to withdraw his previous plea of guilty to the charges of fraud and extortion. On November 14, 2013, Tran entered into an agreement to plead guilty to attempted witness tampering and making false statements to a government agency, both felonies.

5

it was immune from liability for promissory estoppel by reason of Government Code section 818.4.

After hearing, the trial court sustained the demurrer without leave to amend, and entered a judgment of dismissal.  Appellants challenge that ruling on appeal.


DISCUSSION

On appeal from after an order sustaining a demurrer, we review the order de novo, exercising our independent judgment about whether the complaint states a cause of action as a matter of law.  (*Lazar v. Hertz Corp.* (1999) 69 Cal.App.4th 1494, 1501.)  We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions, or conclusions of fact or law.  We also consider matters which may be judicially noticed.  Further we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.  (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318; *Doe v. Albany Unified School Dist.* (2010) 190 Cal.App.4th 668, 674.)

We review the trial court's decision not to grant leave to amend for an abuse of discretion.  (*G.L. Mezzetta, Inc. v. City of American Canyon* (2000) 78 Cal.App.4th 1087, 1091-1092).  Where a demurrer to the original complaint is sustained, denial of leave to amend constitutes an abuse of discretion if the pleading does not show on its face, or by attachment or judicial notice, that it is incapable of amendment.  (See *California Federal Bank v. Matreyek* (1992) 8 Cal.App.4th 125, 130.)

We begin our discussion with a brief history of the Government Tort Claims Act. In *Muskopf v. Corning Hospital Dist.* (1961) 55 Cal.2d 211, the California Supreme Court abolished governmental immunity.  In 1963, the legislature enacted the comprehensive Government Tort Claims Act, Government Code[3] section 900 et seq. ("the Act") eliminating all common law or judicially devised forms of government liability.  Section 815, the cornerstone of the Act, declares that "Except as otherwise provided by statute [a] public entity is not liable for an injury, whether such injury arises

---

[3]      Further statutory references are to this code.

out of an act or omission of the public entity or a public employee or any other person." It provides that all public entities in California, state and local, are liable in tort only to the extent declared by statute. (§ 815; see also, Witkin, 5 Summary of Cal. Law (10th), Torts, § 216 et seq.) Thus, under the Act, all governmental liability is statutory, except as required by the state or federal constitutions. (*Nestle v. City of Santa Monica* (1972) 6 Cal.3d 920, 932.)

Section 815.2, subdivision (a) of the Act provides, "A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative." The Act also establishes specific types of claims from which public entities are immune (e.g., § 818.8 [misrepresentations by employees]) and certain conditions precedent to the filing of a lawsuit against a public entity, including a plaintiff's presentation to the public entity of a claim for money or damages prior to filing suit. (§ 911.2) We discuss these aspect of the Act in more detail later in this opinion.

In 1994, more than thirty years after it was originally enacted, the Legislature amended the Act to add section 815.3, which applies only as to "elected officials." That section provides in relevant part, as follows:

> (a) Notwithstanding any other provision of this part, unless the elected official and the public entity are named as codefendants in the same action, a public entity is not liable to a plaintiff under this part for any act or omission of an elected official employed by or otherwise representing that public entity, which act or omission constitutes an intentional tort . . . . This section shall not apply to defamation.

> (b) If the elected official is held liable for an intentional tort other than defamation in such an action, the trier of fact in reaching the verdict shall determine if the act or omission constituting the intentional tort arose from and was directly related to the elected official's performance of his or her official duties. If the trier of fact determines that the act or omission arose from and was directly related to the elected official's performance of his or her official duties, the public entity shall be liable for the judgment as provided by law. For the purpose of this subdivision, employee managerial functions shall be deemed to arise from, and to directly relate to, the elected

7

official's official duties. However, acts or omissions constituting sexual harassment shall not be deemed to arise from, and to directly relate to, the elected official's official duties.

(c) If the trier of fact determines that the elected official's act or omission did not arise from and was not directly related to the elected official's performance of his or her official duties, upon a final judgment, including any appeal, the plaintiff shall first seek recovery of the judgment against the assets of the elected official. If the court determines that the elected official's assets are insufficient to satisfy the total judgment, including plaintiff's costs are provided by law, the court shall determine the amount of the deficiency and the plaintiff may seek to collect that remainder of the judgment from the public entity. The public entity may pay that deficiency if the public entity is otherwise authorized by law to pay that judgment.

(d) To the extent the public entity pays any portion of the judgment against the elected official pursuant to subdivision (c) or has expended defense costs in an action in which the trier of fact determines the elected official's action did not arise from and did not directly relate to his or her performance of official duties, the public entity shall pursue all available creditor's remedies against the elected official in indemnification, including garnishment, until the elected official has fully reimbursed the public entity.
. . .

(f) It is the intent of the Legislature that elected officials assume full fiscal responsibility for their conduct which constitutes an intentional tort not directly related to their official duties committed for which the public entity they represent may also be liable, while maintaining fair compensation for those persons injured by such conduct. . . .

1. *Appellant's "section 815.3 claim"*

Appellants maintain that section 815.3 establishes a separate cause of action against a public entity, not subject to the immunity and claim presentation provisions of the Act, when an elected official is sued. The City counters that section 815.3 did not create any new substantive rights, pointing out that public entities had previously been liable for the intentional torts of both elected and non-elected employee under section 815.2; the newly-enacted section 815.3 merely created a new a procedural framework for those situations where a plaintiff seeks damages from a public entity based on the intentional torts of an elected official.

8

Pursuant to the fundamental rules of statutory construction, we are to ascertain the intent of the Legislature so as to effectuate the purpose of the law. In construing a statute, our first task is to look at the language of the statute itself. When the language is clear and there is no uncertainty as to the legislative intent, we look no further and enforce the statute according to its terms. (*DuBois v. Workers' Comp. Appeals Bd.* (1993) 5 Cal.4th 382, 387-388.)

The backdrop of section 815.3 was a $1.2 million judgment entered against a Los Angeles County Supervisor based on his intentional interference with the plaintiff's prospective business advantage when he privately contacted the trial court judge during an ongoing case to provide a character reference for the plaintiff's adversary, a friend and political supporter of the supervisor. As described in the Bill Analysis of Assembly Bill No. 2508 introduced by Representative Katz during the 1993-1994 Regular Session, the bill "would limit public entity liability for the intentional torts of an elected official (including harassment but not defamation) to cases where the official and public entity are named as codefendants in the same action." AB 2467, companion legislation introduced by Representative Bowen, was intended to "restrict a public entity['s] authority to pay any judgment or settlement arising from any claim against an 'elected official'" based on the official's tortious conduct. The legislative history of these bills indicates that, in the absence of new legislation, the entire $1.2 million judgment entered against the supervisor would be required to be paid by the County of Los Angeles "under the indemnity provisions of Government Code Section 825."

One court explained the purpose and effect of the statute as follows: "In cases involving elected officials, § 815.3 'enact[s] special provisions' that differ from those under § 815.2. *See* 1994 Cal.Legis.Serv., Ch. 796, A.B. No. 2508 (West). Section 815.2, the older, more general statute, imposes vicarious liability upon public entities 'for the tortious acts and omissions of their employees,' including elected officials, unless the employee is otherwise immune from suit. *See* Cal.Gov't Code § 815.2 Legis. Comm. Comment—Senate (1963). Under § 815.2, it is unnecessary in every case to identify, much less join, the particular employee in the complaint. Section 815.3, on the other

9

hand, 'requires joinder of the elected official in order to pursue a cause of action against the public entity involved.' *See* Cal.Leg. Service, Ch. 796, A.B. No. 2508. In addition, § 815.3 shifts the liability from the public entity to the elected official in instances of sexual harassment and other tortious acts committed outside the scope of employment. Finally, under § 815.3, the injured party must first seek recovery of the judgment from the assets of the elected official before seeking recovery from the public [entity]. *Id.*" (*Ortland v. County of Tehama* (E.D. Cal. 1996) 939 F.Supp. 1465, 1472.)

We believe that the foregoing succinctly summarizes the legislative intent behind section 815.3: To ensure that injuries sustained by parties due to the intentionally tortious conduct of elected officials, which conduct not arise from and was not directly related to the elected official's performance of his or her official duties, are borne by the tortfeasors themselves to the extent their assets are adequate, by requiring the injured persons to sue the elected officials and execute the judgment rendered against them before looking to the public entity for compensation. We reject appellants' contention that section 815.3 creates a new substantive cause of action. Consequently, the trial court properly sustained the City's demurrer to appellants' "section 815.3 claim" without leave to amend. (See *Freeny v. City of San Buenaventura* (2013) 216 Cal.App.4th 1333, 1346-1347 [section 815.3 merely "erects a rule of pleading requiring a public entity to be named as a joint tortfeasor before judgments against an elected official may be enforced against that entity"].) It does not create a new cause of action.


2. *Appellants' failure to file a proper claim with the City pursuant to the Government Claims Act, precludes their recovery of damages based on Tran's intentional torts*

As noted above, liability of a "local public entity" such as the City is subject to a procedural condition precedent; that is to say, the timely filing of a written claim with the proper officer or body is an element of a valid cause of action against a public entity. (See §§ 900.4 and 905; *Del Real v. City of Riverside* (2002) 95 Cal.App.4th 761, 767.) Compliance is mandatory, and cannot be excused on the theory that the entity was not

10

surprised by the suit. "It is not the purpose of the claims statutes to prevent surprise. Rather, the purpose of these statutes is to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation. [Citations.] It is well settled that claims statutes must be satisfied even in face of the public entity's actual knowledge of the circumstances surrounding the claim. Such knowledge – standing alone – constitutes neither substantial compliance nor basis for estoppel." (*City of San Jose v. Superior Court* (1974) 12 Cal.3d 447, 455.) The failure to timely present a proper claim for money or damages to a public entity bars a plaintiff from filing a lawsuit against that entity. (*State v. Superior Court* (*Bodde*) (2004) 32 Cal.4th 1234, 1239.)

The procedural requirements for claim presentation are prerequisites to litigation against a local public entity or employee thereof based not only on tort liability, but on any claim for "money or damages." (§ 905.) A cause of action that is subject to the statutory claim procedure must allege either that the plaintiff complied with the claims presentation requirement, or that a recognized exception or excuse for noncompliance exists. A plaintiff may allege compliance with the claims requirements by including a general allegation that he or she timely complied with the claims statute. (*Perez v. Golden Empire Transit Dist.* (2012) 209 Cal.App.4th 1228, 1236.) If the plaintiff fails to include the necessary allegations, the complaint is subject to attack by demurrer. (*State v. Superior* (*Bodde*), *supra,* 32 Cal.4th at p. 1239.)

Appellants rely on a single, unpublished opinion of the United States District Court for the Eastern District of California (*Trevino v. Lassen Municipal Utility Dist.* (E.D.Cal. Jan. 29, 2008) 2008 WL 269087)[4] to argue that plaintiffs asserting claims for intentional torts of elected officials brought under section 815.3 are not required to file a

---

[4] That same court subsequently reiterated its holding when ruling on a subsequent motion for summary judgment (2009 WL 385792), thus accounting for appellants' use of the plural "courts" when asserting that "courts have found that '[a]n exception to the presentment requirement exists where the defendant state official is alleged to have committed an intentional tort . . . .'"

governmental claim prior to filing their lawsuit.[5]  Appellants also contend, in the alternative, that if the claims requirement was not abrogated by section 815.3, they fully complied with the requirement.

While unpublished federal District Court opinions are citable, they do not constitute binding authority.  (*City of Hawthorne ex rel. Wohlner v. H&C Disposal Co.* (2003) 109 Cal.App.4th 1668, 1678, fn. 5.)  Where, as here, the cited opinion contains no analysis explaining its conclusion, but simply declares that contrary to all other damage claims against a public entity, section 815.3 dispenses with the claim presentment requirement for claims based on the intentional torts of elected officials, it is patently unpersuasive.  And indeed, appellants proffer no rationale for why the Legislature would have silently eliminated this requirement when enacting a statute the purpose of which was to require plaintiffs to name as a defendant the elected official for whose intentional tort they seek compensation from the public fisc.

In addition, there is nothing in the legislative history of section 815.3 which in any way supports appellants' contention that the Legislature intended to eliminate the claim requirement when an elected official and the public entity are joined in a lawsuit alleging intentional torts committed by an elected official related to his official duties, as pled by Gong in her operative complaint.  We submit that if the Legislature desired to enact such a major change to the Act, it would have clearly stated so.  From the fact that it did not, we conclude that the claim presentation requirement continues as the law of this state.

Appellants next contend that they in fact complied with the claim presentation requirement of the Act.  It is uncontroverted that timely claims were filed with the City. The problem, however, is that the factual allegations of the complaint in no way correspond with the allegations of the claims filed with the City.

---

[5]     We note that in another unpublished opinion, the U.S. District Court for the Central District of California came to the opposite conclusion, recognizing that section 815.3 does not provide an exception to the claim presentment requirement.  (*Jelahej v. Miller* (C.D. Cal. Oct. 6, 2008) 2008 WL 4501920.)

12

Appellants' complaint states claims against the City for vicarious liability resulting from Tran's alleged tortuous acts of fraud, extortion, assault and battery, harassment and intentional infliction of emotional distress. The complaint alleges that Tran fraudulently promised that the City would approve L&G's development plans, extorted $38,000 in loans from Gong, sexually harassed, physically assaulted, and threatened to kill her. Yet none of these allegations are included in the government claims presented to the City.

In order to comply with claim presentation requirement, the facts alleged in a complaint filed in the trial court supporting a cause of action against a government employee, including the damages alleged to have been suffered by the claimant, must be consistent with the facts contained within the government claim. (See *Williams v. Southern California Gas Co.* (2009) 176 Cal.App.4th 591, 597-598.)

If a plaintiff alleges compliance with the claims presentation requirement, but the public records do not reflect compliance, the governmental entity can request the court to take judicial notice under Evidence Code section 452, subdivision (c) that the entity's records do not show compliance. (See *Fowler v. Howell* (1996) 42 Cal.App.4th 1746, 1752; CEB, California Government Tort Liability Practice (4th ed.) p. 181).)

The court in *Watson v. State* (1993) 21 Cal.App.4th 836, 844 described the requirement for claim filing and the limitations on what may be included in a complaint based on a claim as follows: "'[E]ach cause of action must [be] reflected in a timely claim. In addition, the factual circumstances set forth in the written claim must correspond with the facts alleged in the complaint; even if the claim were timely, the complaint is vulnerable to demurrer if it alleges a factual basis for recovery which is not fairly reflected in the written claim. [Citations.]' (*Nelson v. State of California* [(1982)] 139 Cal.App.3d 72, 79.)"

Though the pre-litigation claims in the present case were timely filed with the City, they do not "fairly reflect" causes of actions subsequently brought by appellants based on Tran's alleged tortious conduct. The claims only refer to L&G's failed development project caused by changes in the composition of the City Council and the City's policies.

13

The First Claim, submitted in December 2011, states: "Description of incident/accident that caused you to make this claim: Prior City Managers & Employees made me [] purchase this property to build Mix Use Project. This purchase was completed in 2009. I went through all plan check and John Tran kept delaying me from continu[ing]. Now the City told me that I cannot build it anymore because City Council changed and Policy changed too."

The Second Claim, filed in March 2012, states: "Description of incident/accident that caused you to make this claim: In 2006, this property was approved to build an office building. City Manager and employees wanted me to build a mix-use property next to it. So we adjusted the plan and submitted to City. In April 2006, City approved 'Conditional Preliminary Use Approval' for a mix[-]use project and we purchase[d] the property at 9416 Valley Blv'd, followed City's suggestion to build together. From 2006 on, numerous City People Change[d] and Policy change[d], both office building and Mixed use project failed."

When asked to specify their damages, appellants itemized their specific losses regarding the development project, but did not request any damages regarding Tran's tortious acts. In response to the question "What specific injury, damages or other losses did you incur?" Appellants answered, "We lost the market and property value caused by the City.

| | | |
|---|---|---|
| "1. Project as an office building | $3,500,000 | |
| "2. Project design fee, plan check & permits | $ 200,000 | |
| "3. Property value down & lost | $ 800,000 | |
| "4. Mortgage payment for 3 years | $ 180,000 | |
| "5. Property Taxes | $ 69,000 | |
| "6. Maintenance, Insurance, etc. | $ 30,000 | |
| "7. Legal Fees | $ 70,000 | |
| "Total | $4,849,000" | |

As previously noted, the purpose of the claim requirement is to provide public entities with sufficient information so that they can investigate claims and settle them, if

14

appropriate.  (*San Jose v. Superior Court, supra,* 12 Cal.3d at p. 485.)  Neither the First Claim nor the Second Claim include any facts or claims for damages, as subsequently alleged in appellants' complaint, regarding Tran's purported (a) extortion of personal "loans;" (b) fraudulent misrepresentations; (c) physical assaults on Gong; (d) sexual harassment of Gong; or (e) threat to "kill her" if Gong reported him to the authorities.

The "substantial compliance" exception (see *Connelly v. County of Fresno* (2006) 146 Cal.App.4th 29) to the claim presentment requirement does not "save" appellants' claims in the present case because there is no reference whatsoever in either of the claims to Tran's alleged tortious behavior, nor were damages sought for those alleged acts.  We hold that appellants have totally failed to comply with the claim presentation requirement of section 900 et seq.[6]  Therefore the demurrer to the tort causes of action was properly sustained without leave to amend.

3.  *The trial court properly sustained the City's demurrer to appellants' cause of action for promissory estoppel*

Appellants also seek to hold the City liable for Tran's misdeeds based on the theory of promissory estoppel.  They claim that their promissory estoppel cause of action "survives" because it is purportedly an action "based on contract."

Assuming arguendo that Gong's position is correct that no pre-litigation claim need be filed when a claim against a public entity is based upon the theory of promissory estoppel, her claim is still barred by § 818.4 which reads as follows:  "A public entity is not liable for an injury caused by the issuance, denial, suspension, or revocation of, or by the failure or refusal to issue, deny, suspend, or revoke, any permit, license, certificate, approval, order, or similar authorization, where the public entity or an employee of the public entity is authorized by enactment to determine whether or not such authorization

---

[6]     Appellants contend that the City was aware of Gong's claims based on unspecified "oral" contacts between Gong and the City.  This is not sufficient notice.  Written notice is required.  (*City of San Jose v. Superior Court, supra,* 12 Cal.3d at p. 455.)  This is true even if plaintiff could allege the City's actual knowledge of the facts of the claim. (*Hall v. City of Los Angeles* (1941) 19 Cal.2d 198, 203.)

15

should be issued, denied, suspended or revoked." The fact that Tran, an elected official, is named as a co-defendant with City changes nothing. (See *Freeny v. City of San Buenaventura, supra,* 216 Cal.App.4th at pp. 1346-1347 ["Section 815.3 erects a rule of pleading; . . . [it] does not purport to eliminate all of a public entity's tort immunities once that entity is alleged to be a co-defendant."].)

In short, the City is immune from appellants' promissory estoppel cause of action, for its failure to approve L&G's real estate project. Consequently, the trial court did not err in sustaining the demurrer to this cause of action without leave to amend.

4. *Motion to Strike*

In view of our decision affirming the trial court's order sustaining the demurrer to the complaint without leave to amend, we find that the issue of the propriety of the court's order granting the City's motions to strike is moot.

DISPOSITION

The judgment is affirmed. The City is to recover its costs on appeal.

TO BE PUBLISHED IN THE OFFICIAL REPORTS

MINK, J.[*]

We concur:

MOSK, ACTING P. J.

KRIEGLER, J.

---

[*] Retired Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.