**Yue–Man KWOK, Kerman Kwok and Hansen Kwok Plaintiffs— Appellants,**

v.

**METROPOLITAN LIFE INSURANCE COMPANY Defendant—Appellee.**

**No. 99–17180.**

**D.C. No. CV–97–06154–OWW/SMS.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 15, 2001.

Decided April 2, 2001.

Before REINHARDT, RYMER and FISHER, Circuit Judges.

## MEMORANDUM *

Yue–Man Kwok together with Kerman and Hansen Kwok appeal the district court's order granting summary judgment to Metropolitan Life Insurance (MetLife). We have jurisdiction under 28 U.S.C. § 1291 and we review the summary judgment de novo. *See Weiner v. San Diego County*, 210 F.3d 1025, 1028 (9th Cir.2000). We affirm.

The Kwoks' appeal turns on their argument that MetLife is estopped, and has waived the right, to deny coverage because Canandaigua, acting for MetLife, deducted premium payments from H.K. Kwok's paycheck on two occasions in February 1996, knowing that he was not actively at work on the date the policy took effect. They rely on cases where an eligibility mistake was made by the insurer's agent, premiums were accepted, and the person applying for insurance would have a reasonable expectation of being covered. *See, e.g., Elfstrom v. New York Life Ins. Co.*, 67 Cal.2d 503, 63 Cal.Rptr. 35, 432 P.2d 731 (1967) (agent told insured to sign enrollment card, inserted incorrect information on the application, and collected premiums without the insured's knowledge of qualifications for coverage); *John Hancock Mut. Life Ins. Co. v. Dorman*, 108 F.2d 220 (9th Cir.1940) (agent determined that director who was not an employee could apply under term contract of employee group insurance, issued certificate, and collected monthly premium for more than the one-year period of incontestability); *Ransom v. The Penn Mut. Life Ins. Co.*, 43 Cal.2d 420, 274 P.2d 633 (1954) (when application indicates that if first premium is paid insurance shall be in force, the contract of insurance arises upon receipt of completed application accompanied by first premium as person would assume he was getting immediate coverage); *Amberg v. Bankers Life Co.*, 3 Cal.3d 973, 92 Cal.Rptr. 273, 479 P.2d 633 (1971) (full premium for life insurance retained when company president became consultant even though agent knew he was no longer president); *Bass v. John Hancock Mut. Life. Ins. Co.*, 10 Cal.3d 792, 112 Cal.Rptr. 195, 518 P.2d 1147 (1974) (employee refused coverage but new booklet indicated that if he were

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

at work on October 25, insurance would be available; agent's mistake in assuming new coverage was rejected binds insurer).

Here, Canandaigua wrote its employees, including Kwok, that the MetLife policy was to replace the current (Hartford) supplemental life insurance plan effective February 1, 1996 for all employees actively at work on that date (or on the first day of the month following a return to work). The MetLife enrollment card that Kwok completed on December 18, 1995 (for insurance in the same face amount as the Hartford plan) states that the applicant must be actively at work on the effective date in order to be covered. The condition "actively at work" is defined to mean "performing my full-time regularly scheduled duties." Kwok's signature on the enrollment form certified that he had read this information, and that "I understand that I must be actively at work on the effective date of this plan for coverage I have selected to be effective." His last day at work was December 22; he was hospitalized until his death February 13. The Kwoks received benefits from Hartford. In these unique circumstances, we cannot say that there is any element of misconduct by the insurer or detrimental reliance by the insured. *See Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1559–60 (9th Cir.1991) (describing elements of waiver and estoppel in insurance context). Although MetLife (through its agent) deducted premiums knowing that Kwok was not actively at work on February 1, it also knew that its coverage was replacement coverage and that Kwok had acknowledged that he would not be covered by MetLife unless he was actively at work on that date (or subsequently). By the same token, there is no basis in this case for concluding that Kwok could have reasonably relied on the payroll premium deductions to expect that he had new, *additional* coverage.

Pointing to *Ransom* and *Smith v. Westland Life Ins. Co.*, 15 Cal.3d 111, 123 Cal.Rptr. 649, 539 P.2d 433 (1975), the Kwoks also argue that it is unconscionable for MetLife to collect premiums without providing coverage when the covered risk (death of the insured) occurs. But in both cases, the insurer's "binder" induced a reasonable belief of coverage. *Smith,* 15 Cal.3d at 124, 123 Cal.Rptr. 649, 539 P.2d 433. MetLife (acting through Canandaigua) did nothing similar. To the contrary, Canandaigua advised its employees that the MetLife plan would replace Hartford's plan if an employee were actively at work February 1, otherwise the first of the next month on which he was. So did the enrollment form, on which Kwok acknowledged that "[i]f not actively at work [on the effective date] I understand my effective date of coverage will be postponed until the 1st of the month following my return to active work." MetLife did not retain the deducted premiums, and benefits were in fact paid on the Hartford plan. In these circumstances, we cannot say that MetLife's conduct is unconscionable.

Finally, the Kwoks maintain that they are entitled to partial judgment for policy benefits plus prejudgment interest and remand for trial of their bad faith claim. However, this argument is moot because the Kwoks are not entitled to benefits under the MetLife policy.

AFFIRMED.