Filed 10/7/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| MICHAEL A. DONES,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>LIFE INSURANCE COMPANY OF NORTH AMERICA et al.,<br><br>        Defendants and Respondents. | A157662<br><br>(Alameda County Super. Ct. No. RG18911237 |

While employed by the County of Alameda (County) and on a medical leave of absence, Trina Johnson enrolled online in supplemental life insurance coverage under a group insurance policy insured by the Life Insurance Company of North America (LINA). She remained on leave on the policy's effective date and died six months later, without having returned to work. When her beneficiary claimed benefits, LINA denied coverage based on a policy provision stating the insurance would not become effective if the employee was not in "active service" on the effective date.

Johnson's beneficiary sued both LINA and the County for breach of contract arguing that both waived or were estopped from asserting the active service precondition to coverage. The trial court sustained demurrers without leave to amend and entered judgment in favor of LINA and the County.

1

As we will explain, we agree with appellant Michael Dones that the trial court erred in sustaining respondent LINA's demurrer without leave to amend. As to the respondent County, we find no error. We will therefore affirm the judgment as to the County but reverse the judgment as to LINA and remand for further proceedings.

## BACKGROUND

Trina Johnson was an employee of the Alameda County Sheriff's Department. In 2014, LINA issued a group life insurance policy to the Trustee of the Group Insurance Trust for Employers in the Public Administration Industry for the benefit of the County of Alameda acting on behalf of its employees. This master policy provided a basic life insurance benefit to each eligible employee, including Johnson. The second amended complaint alleged that copies of the master policy were not distributed to employees, and that employees who enrolled for the benefit were supposed to be given certificates of insurance describing the terms of coverage but it was not known whether such certificates were distributed.[1]

The master policy states: "If an Employee is not actively at work due to Injury or Sickness, coverage will not become effective for an Employee on the date his or her coverage would otherwise become effective under this Policy. [¶] Coverage will become effective on the date the Employee returns to Active Service."

The master policy defines "Active Service" as follows: "An Employee will be considered in Active Service with the Employer on a day which is one of the Employer's scheduled work days if either of the following conditions

---

[1] The master policy stated, "A certificate of insurance will be delivered to the Employer for delivery to Insureds. Each certificate will list the benefits, conditions and limits of the Policy. It will state to whom benefits will be paid."

2

are met:  [¶] 1.  He or she is actively at work.  This means the Employee is performing his or her regular occupation for the Employer on a full-time basis, either at one of the Employer's usual places of business or at some location to which the Employer's business requires the Employee to travel.  [¶] 2.  The day is a scheduled holiday, vacation day or period of Employer approved paid leave of absence, other than disability or sick leave after 7 days."

On April 1, 2016, the master policy was amended to increase the amount of coverage available to employees including Johnson, and she elected to obtain coverage in the maximum amount, $20,000.  Again, it was alleged to be unknown whether Johnson received a certificate of insurance.

In October 2016, while on a medical leave of absence, Johnson received an announcement of benefit changes for the 2017 calendar year for which she was eligible, including voluntary supplemental life insurance.  The announcement stated, "Voluntary Employee Supplemental Life Insurance – **NEW & SPECIAL** Effective January 1, 2017 Employees may purchase Life insurance in $10,000 increments, not to exceed the lesser of three times (3x) their annual base salary or $300,000 as your guarantee issue.  Evidence of insurability is not required up to the guaranteed issued limit during the 2017 Annual Open Enrollment period.  Note:  *Coverage will take effect on January 1, 2017 as long as you are in active service when the coverage takes effect. . . .*"  The announcement did not contain a definition of "active service," nor did any other document provided to Johnson.  The announcement stated, however, "For more details contact us or use the EBC Website to review the Group Life Insurance Certificate for Non-Managers – Basic Life and Voluntary Employee Life.  If you are on a leave of absence on January 1, remember to contact the EBC within 30 days of your return to work to see if

3

you are eligible for this new benefit." The distributed announcement noted, "If you have any questions, you may call the Employee Benefits Center at 891-8991, or visit us, Monday thru Friday from 8:00 am to 5:00 pm for one-on-one assistance."

Johnson made her benefits elections online, selecting $230,000 supplemental coverage. The named primary beneficiary was Dones, who was then Johnson's domestic partner and later her husband. The second amended complaint alleges that the online enrollment form contained a section entitled "Active Service – Employee" but did not provide a complete description of the terms of the insurance policy.

A copy of the online enrollment form (exhibit B to the second amended complaint), shows bolded text in the "Supplemental Life–Employee" section stating, "In order to be eligible for this benefit you must meet the definition of an Active Service – Employee. [¶] Questions? Need additional information, Click Here." The "eBenefits Information Sheet" included in exhibit B includes the following:

"Active Service – Employee [¶] If you are an Employee, you are in Active Service with the Employer on a day which is one of the Employer's scheduled work days if either of the following conditions are met. [¶] 1. You are actively at work. This means you are performing your regular occupation for the Employer on a full-time basis, either at one of the Employer's usual places of business or at some location to which the Employer's business requires you to travel. [¶] 2. The day is a scheduled holiday, vacation day or period of Employer approved paid leave of absence, other than disability or sick leave after 7 days. [¶] You are considered in Active Service on a day which is not one of the Employer's scheduled work days only if you were in Active Service on the preceding scheduled work day.

"Active Service [¶] If you are an Employee, you are in Active Service with the Employer on a day which is one of the Employer's scheduled work days if either of the following conditions are met. [¶] 3. You are actively at work. This means you are performing your regular occupation for the Employer on a full-time basis, either at one of the Employer's usual places of business or at some location to which the Employer's business requires you to travel. [¶] 4. The day is a scheduled holiday, vacation day or period of Employer approved paid leave of absence, other than disability or sick leave after 7 days. You are considered in Active Service on a day which is not one of the Employer's scheduled work days only if you were in Active Service on the preceding scheduled work day."

On October 24, 2016, Johnson was diagnosed with lung cancer.

On November 1, 2016, Johnson received a list of her 2017 benefit elections from the County Employee Benefits Center confirming her enrollment for the supplemental life insurance and stating the coverage would become effective on January 1, 2017. Johnson's daughter was listed as the beneficiary for the basic life insurance benefit and Dones was listed as the beneficiary for the supplemental life insurance.

On or about December 29, 2016, Johnson received a "Confirmation of Benefit Elections" including the supplemental life insurance.[2] The confirmation stated, "If this Statement is correct and consistent with your Open Enrollment Summary, retain this document for your records and no further action is required. If the EBC does not receive a corrected Statement from you by 1/13/2017, your elections will be considered correct and final."

---

[2] The second amended complaint erroneously indicated the date Johnson received the confirmation as December 29, 2017.

5

The confirmation was accurate and Johnson did not notify the County of any changes.

Beginning on January 1, 2017, the County deducted premiums for Johnson's benefits, including the supplemental life insurance, from her paycheck. The supplemental life insurance premiums were sent to and accepted by LINA. At the end of February 2017, Johnson's paycheck was insufficient to cover the premiums for her benefits and she paid out of pocket for those premiums, including the supplemental life insurance.

The second amended complaint alleged that it was "unknown" whether the package of documents provided to Johnson when she enrolled in the supplemental life insurance benefit included the policy provision stating, "If an eligible Employee is not in Active Service on the date insurance would otherwise be effective, it will be effective on the date he or she returns to Active Service." Earlier versions of the complaint had alleged the package provided to Johnson did contain this policy provision;[3] the second amended complaint alleged, "after further review of documents, that allegation appears to be unfounded." Johnson was not sent a copy of the insurance policy or an individual certificate setting forth the terms of the insurance coverage (see Ins. Code, § 10209). The second amended complaint alleged that Johnson and Dones believed the supplemental life insurance coverage would become

_____

[3] The original and first amended complaints alleged, "16. The Supplemental Benefit provided that the coverage would become effective on January 1, 2017. There was a notice in the package stating that if the employee was not actively at work, the coverage would take effect when the employee returned to active service. If any employee who elected the Supplemental Benefit while on leave returned to work for even one day in 2017, the Supplemental Benefit became active. The Decedent did not appreciate the significance of the requirement, and believed that she would be covered under the policy automatically after the effective date."

effective on January 1, 2017, and neither understood the provision delaying the effective date.

The second amended complaint alleged that unknown to Johnson or Dones, if an employee who elected the supplemental insurance benefit while on leave returned to work for even one day after the January 1, 2017, effective date, the supplemental benefit would become active, but Johnson did not understand the requirement and reasonably believed that she would be covered under the policy automatically after the effective date. It was further alleged that Johnson was capable of performing her duties for at least the first several months of 2017, and could and would have returned to work if she had been aware of the need to do so in order to activate the insurance coverage. It was alleged that although the County was aware both that Johnson was on a medical leave of absence and that the insurance policy required employees be actively at work for the benefit to take effect, no one advised Johnson of the work requirement or that the policy was not in effect.

The second amended complaint alleged that the County was acting as agent for LINA in administration of the insurance policy; that Johnson detrimentally relied on the confirmation that the insurance was in effect; and that by repeatedly deducting the premiums from Johnson's paycheck and not notifying her of any deficiency in her application for coverage, the County, for itself and as agent for LINA, knowingly and voluntarily waived any requirement that the insured be actively at work for the insurance coverage to take effect.

Johnson died on July 9, 2017. In August, Dones was informed by a County human resources benefits manager that Cigna had confirmed Johnson's supplemental life insurance policy never became effective because she had not returned to active service, and that the County would be

7

refunding the premiums deducted from Johnson's paycheck to her estate. Although informed that a claim for the supplemental insurance would be denied, Dones submitted a claim which Cigna then denied on behalf of LINA on the ground that the coverage never became effective. Dones's appeal from the denial was denied, and the County rejected Dones's claim for damages.

Dones's initial complaint named "Cigna Life Insurance Company" and the County as defendants and alleged causes of action for breach of contract and breach of implied contract against both, as well for breach of fiduciary duty against the County and for breach of the duty of good faith and fair dealing against the insurer. Dones then filed a first amended complaint naming LINA, a subsidiary of Cigna Corporation, in place of Cigna Life Insurance Company, with causes of action against LINA and the County for negligence and breach of implied contract, against LINA for breach of contract and breach of the duty of good faith and fair dealing, and against the County for breach of fiduciary duty. Demurrers filed by LINA and by the County were sustained with leave to amend.

Dones's second amended complaint alleged causes of action for breach of contract and breach of implied contract against LINA and the County and for breach of the implied duty of good faith and fair dealing against LINA. The County and LINA again demurred.

The trial court sustained the demurrers without leave to amend. As to the causes of action for breach of contract and implied breach of contract, the court held that since it was alleged the life insurance benefits would not go into effect until Johnson returned to active service, which she did not do, failure to provide supplemental life insurance benefits was not a breach of contract. The court rejected Dones's argument that LINA and County waived or were estopped from enforcing the active service requirement based on

8

caselaw holding waiver and estoppel arguments cannot be used to create insurance coverage that does not exist, reasoning that Johnson's failure to meet the condition precedent meant the policy never went into effect. Also, as to the County, the court found Dones failed to plead facts showing the "grave injustice" necessary for equitable estoppel against the County and failed to allege the Board of Supervisors—the only body legally authorized to approve health and welfare benefits—approved a benefit providing Johnson with life insurance coverage if she did not return to active service. While finding it unnecessary to reach Dones's agency allegations given its conclusion there was no breach of contract, the court noted that the second amended complaint successfully alleged an agency relationship between the County and LINA but failed to adequately allege an "undisclosed or partially-disclosed" agency relationship. The court found the cause of action for breach of the covenant of good faith and fair dealing failed because it could not survive without an adequately pled breach of contract. Finally, the court declined to rule on the argument that the second amended complaint was a sham pleading but noted that in light of the contradictions between it and previous versions of the complaint, it was "at the very least susceptible to consideration as sham pleading designed primarily to avoid further demurrer."

The court entered a judgment dismissing the action, and this appeal followed.

## DISCUSSION

"On review from an order sustaining a demurrer, 'we examine the complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory, such facts being assumed true for this purpose. [Citations.]' (*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th

9

412, 415.)  We may also consider matters that have been judicially noticed. (*Serrano v. Priest* (1971) 5 Cal.3d 584, 591; *City of Morgan Hill v. Bay Area Air Quality Management Dist.* (2004) 118 Cal.App.4th 861, 869–870.)" (*Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42.)  "If the court sustained the demurrer without leave to amend, as here, we must decide whether there is a reasonable possibility the plaintiff could cure the defect with an amendment.  ([*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.])  If we find that an amendment could cure the defect, we conclude that the trial court abused its discretion and we reverse; if not, no abuse of discretion has occurred.  (*Ibid.*)  The plaintiff has the burden of proving that an amendment would cure the defect.  (*Ibid.*)" (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.)

## I.

As we have said, LINA denied coverage on the ground that Johnson's supplemental life insurance benefit never went into effect because she did not return to active service.  The provision that the insurance would go into effect only if an eligible employee was in "active service" was a condition precedent: "[A] condition precedent is either an act of a party that must be performed or an uncertain event that must happen before the contractual right accrues or the contractual duty arises.  [Citations.]" (*Platt Pacific, Inc. v. Andelson* (1993) 6 Cal.4th 307, 313.)  "If the condition is not fulfilled, the right to enforce the contract does not evolve.  (5 Williston on Contracts [(3d ed.-Jaeger 1961)] § 663, p. 127.)" (*Kadner v. Shields* (1971) 20 Cal.App.3d 251, 258.)  Accordingly, the trial court determined that the supplemental life insurance for which Johnson paid premiums by payroll deductions and out of pocket payments never actually became operative and LINA had no obligation to do more than return the premium payments to Johnson's estate.

10

Dones contends that LINA waived any requirement of "active employment" by informing Johnson through her pay stub that her supplemental life insurance was in force, deducting premiums from her paycheck, requiring her to pay premiums out of pocket when her paycheck did not cover the premiums, failing to provide her with an insurance certificate stating the terms of the insurance, which would have informed her if she was not covered, and failing to notify her that the policy would not be in force until she returned to work for at least one day. Also, because these acts led Johnson to believe she had coverage at a time when she could and would have satisfied the condition precedent if she had known of it, Dones maintains LINA is estopped from denying the existence of the insurance policy. With the exception of accepting premium payments, the conduct alleged as the basis of the waiver and estoppel arguments was by the County, not LINA; as will be discussed below, Dones maintains LINA is liable because the County was acting as the insurer's agent.

" ' "[W]aiver" means the intentional relinquishment or abandonment of a known right.' (*Bickel v. City of Piedmont* (1997) 16 Cal.4th 1040, 1048; see *Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 31.) Waiver requires an existing right, the waiving party's knowledge of that right, and the party's 'actual intention to relinquish the right.' (*Bickel*, at p. 1053.) ' "Waiver always rests upon intent." ' (*City of Ukiah v. Fones* (1966) 64 Cal.2d 104, 107.) The intention may be express, based on the waiving party's words, or implied, based on conduct that is ' "so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished." ' (*Savaglio v. Wal-Mart Stores, Inc.* (2007) 149 Cal.App.4th 588, 598; see *Waller*, at pp. 31, 33–34.)" (*Lynch v. California Coastal Com.* (2017) 3 Cal.5th 470, 475.)

11

"Generally ' "four elements must be present in order to apply the doctrine of equitable estoppel: (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury." ' (*California Ins. Guarantee Assn. v. Workers' Comp. Appeals Bd.* (1992) 10 Cal.App.4th 988, 997.)" (*Colony Ins. Co. v. Crusader Ins. Co.* (2010) 188 Cal.App.4th 743, 751.)

## A.

LINA argues the waiver and estoppel arguments must be rejected as a matter of law, as the trial court ruled. LINA relies upon cases holding that waiver and estoppel cannot be used to create insurance coverage that does not otherwise exist. " ' " 'The rule is well established that the doctrines of implied waiver and of estoppel, based upon the conduct or action of the insurer, are not available to bring within the coverage of a policy risks not covered by its terms, or risks expressly excluded therefrom, and the application of the doctrines in this respect is therefore to be distinguished from the waiver of, or estoppel to assert, grounds of forfeiture. . . .' " ' (*Aetna Casualty & Surety Co. v. Richmond* (1977) 76 Cal.App.3d 645, 653.)" (*Manneck v. Lawyers Title Ins. Corp.* (1994) 28 Cal.App.4th 1294, 1303 (*Manneck*); *Komorsky v. Farmers Ins. Exchange* (2019) 33 Cal.App.5th 960, 972; *R & B Auto Center, Inc. v. Farmers Group, Inc.* (2006) 140 Cal.App.4th 327, 352 (*R & B Auto*).)

The cases LINA relies upon involve plaintiffs' attempts to obtain coverage under existing insurance policies for claims not covered by the terms of their policies. For example, *Manneck, supra,* 28 Cal.App.4th at page 1297, held a title insurance company was not obligated to prosecute an action on

12

behalf of the plaintiffs, or indemnify them for losses, due to alleged defects in title to their property. Subsequent to purchase of their home and title insurance, a survey revealed the plaintiffs' pool and related structures were actually on adjoining property they did not own. (*Id.* at p. 1297. The insurer communicated with the adjoining owner, which agreed to resolve the situation, and advised the plaintiffs that while their policy provided for coverage if they were forced to remove structures extending onto adjoining land, it did not provide coverage absent a pending forced removal. (*Id.* at p. 1298.) Accordingly, the insurer refused to institute legal action against the adjoining owner prior to any forced removal. (*Ibid.*) *Manneck* rejected the plaintiffs' attempts to establish coverage by estoppel or waiver based on the rule that "coverage under an insurance policy cannot be established by estoppel or waiver," finding the plaintiffs' reliance on the insurer's conduct in handling the claim "of no consequence because of the inapplicability of the doctrines of estoppel or waiver." (*Id.* at p. 1303.)

In *R & B Auto,* a used car dealership sought insurance including liability coverage for losses due to lemon laws and was advised by an insurance agent and representative of the insurer that the policy it purchased included this coverage. (*R & B Auto, supra,* 140 Cal.App.4th at pp. 333–334.) In fact, the plain language of the policy provided coverage only for sales of new cars. (*Id.* at p. 336.) When the dealership was sued by a customer for violation of the lemon law, the insurer did not agree to provide a defense or indemnity and the dealership subsequently sued for claims including breach of contract. (*Id.* at p. 335.) *R & B Auto* rejected the argument that the insurer waived any defenses to coverage by choosing not to deny a duty to defend or indemnity, leaving the coverage determination up in the air, and should be estopped from denying coverage for this reason and because the

13

dealership relied on the agents' representations that the policy would cover used car sales. (*Id.* at pp. 351–352.) *R & B Auto* quoted the rule described in *Manneck, supra,* 28 Cal.App.4th at page 1303, distinguishing the use of waiver and estoppel theories to establish an insurer had forfeited a right under the contract from the dealership's attempted "use of the theories of waiver and estoppel to create coverage where none otherwise exists—that is, to create an otherwise nonexistent written contact providing lemon law coverage for used car sales, in order to use the newly created contract as the basis for a claim of breach." (*R & B Auto,* at p. 352; see, *Aetna Casualty & Surety Co. v. Richmond, supra,* 76 Cal.App.3d at pp. 648–650, 653; *Raisin Bargaining Assn. v. Hartford Cas. Ins. Co.* (E.D.Cal. 2010) 715 F.Supp.2d 1079, 1089 [waiver and estoppel could not be used to avoid insurer's reliance on exclusionary provisions of contract]; *California Dairies, Inc. v. RSUI Indemnity Co.* (E.D.Cal., Apr. 16, 2010) 2010 WL 1541230, pp. *8–*10, *16 [discussing *Manneck* and related cases but finding implied waiver of exclusionary provision a question of fact].)

Unlike the cases LINA relies upon, the present case does not involve the scope of coverage under an existing insurance policy but rather the question whether the policy ever went into effect. None of LINA's cases involve waiver or estoppel in the context of a condition precedent to operative policy coverage.

*Salyers v. Metropolitan Life Insurance Company* (9th Cir. 2017) 871 F.3d 934 (*Salyers*), a case involving employee benefits subject to the Employee Retirement Income Security Act (ERISA) (29 U.S.C. § 1001 et seq.), found waiver in circumstances more similar to the present case. The employee initially applied for $20,000 life insurance coverage for herself and her husband through a group plan offered by her employer, an amount the

14

summary plan description stated did not require evidence of insurability (a statement of health). (*Salyers,* at p. 936.) Due to an administrative error, the employer entered the amount of coverage for the husband as $500,000, an amount that did require evidence of insurability, and deducted premiums from the employee's paycheck based on that higher level of coverage; neither the employer nor the insurer asked for evidence of insurability. (*Ibid.*) During the next open enrollment period, the employee elected $250,000 coverage for her husband and, although the plan documents stated evidence of insurability was required and the open enrollment guide stated any coverage requiring a statement of health would not take effect until approved by the insurer, the employee did not submit evidence of insurability but the employer again deducted the premiums and neither the employer nor the insurer requested evidence of insurability. (*Id.* at pp. 936–937.) When the husband died soon thereafter, a letter from the employer stated the employee had $250,000 in coverage, but when she submitted a claim to the insurer, the insurer confirmed there was no statement of health on file and refused to pay more than $30,000 (the $20,000 the employee had first elected plus an annual increase). (*Id.* at p. 937.)

*Salyers* held the insurer waived the evidence of insurability requirement by accepting her premiums without asking her to provide a statement of health. (*Salyers, supra,* 871 F.3d at p. 938.) Finding the employer acted as the insurer's agent on the facts of that case, the court concluded, "The deductions of premiums, [the insurer] and [employer's] failure to ask for a statement of health over a period of months, and [the employer's] representation to Salyers that she had $250,000 in coverage were collectively 'so inconsistent with an intent to enforce' the evidence of insurability requirement as to 'induce a reasonable belief that [it] ha[d] been

15

relinquished.' *See Intel Corp.* [*v. Hartford Accident & Indem. Co.* (9th Cir. 1991)] 952 F.2d [1551,] 1559; *see also Gaines* [*v. Sargent Fletcher, Inc. Grp. Life Ins. Plan* (C.D.Cal. 2004)] 329 F.Supp.2d [1198,] 1222. Accordingly, [the insurer] waived the evidence of insurability requirement, and it cannot contest coverage on that basis." (*Salyers*, at p. 941.)

*Salyers* noted that "[s]everal district courts in our circuit have held that waiver 'cannot be used to create coverage beyond that actually provided by an employee benefit plan' " (citing *Flynn v. Sun Life Assur. Co.* (C.D.Cal. 2011) 809 F.Supp.2d 1175, 1187 (*Flynn*) and *Yale v. Sun Life Assur. Co.* (E.D.Cal., Oct. 31, 2013, No. 1:12-cv-01429-AWI-SAB) 2013 WL 5923073, p. *13 (*Yale*))—a principle analogous to the one Dones relies upon here. *Salyers* disagreed with the application of this principle to the facts of that case: "But where, as here, premium payments have been accepted despite the plan participant's alleged noncompliance with policy terms, "giving effect to the waiver . . . does not expand the scope of the ERISA plan; rather it provides the plaintiff with an available benefit for which he paid." (*Salyers,* at p. 941, fn. 4, quoting *Gaines v. Sargent Fletcher, Inc. Grp. Life Ins. Plan*, *supra*, 329 F.Supp.2d at p. 1222 (*Gaines*).)

*Gaines*, similarly, found the insurer waived, and was estopped from asserting, the right to deny benefits under a group life insurance plan based on the employee's failure to provide evidence of good health when he applied for coverage. (*Gaines, supra,* 329 F.Supp.2d at pp. 1204, 1221–1223.) There, neither the insured nor any of his employer's other employees were informed that evidence of good health was a precondition to coverage, the plan language was ambiguous, and the insurer accepted the insured's premium payments without indicating any information was missing. (*Id.* at pp. 1203, 1208–1209.)

16

*Yale,* one of the cases *Salyers* disagreed with and also one of those LINA relies upon for the proposition that the County's deduction of premiums does not operate to create coverage under a policy where it would not otherwise exist, distinguished *Gaines* in declining to find waiver of an evidence of insurability requirement. (*Yale, supra,* 2013 WL 5923073, at pp. *1–*13.) In *Yale,* the enrollment form stated evidence of insurability was required for coverage in the amount the employee selected, but premiums were deducted based on that amount despite her failure to provide the information. (*Id.* at pp. *4, *6.) *Yale* held the insurer did not waive the precondition to coverage because the premium deductions resulted from an administrative billing error, the insurer's conduct did not conclusively demonstrate the "intentional relinquishment of known right" required for waiver, and finding waiver in the absence of ambiguity in the policy would violate the rule that waiver cannot be used to create coverage. (*Id.* at pp. *6, *10–*11, *13.) The court rejected an estoppel theory because the unambiguous requirement of evidence of insurability precluded reasonable reliance on the insurer's conduct to indicate it was excusing compliance with the requirement. (*Id.* at p. *15.) [4]

---

[4] *Flynn, supra,* 809 F.Supp.2d 1175, the other case *Salyers* disagreed with, involved an employee who never became insured under a life insurance policy because he never completed his employer's enrollment process and in fact cancelled his application; although premiums had been deducted from his paycheck prior to his cancellation, they were never sent to the insurer and were returned to the employee by the employer. (*Flynn,* at pp. 1179–1181, 1188.) The court stated the principle that "concepts of waiver or estoppel cannot be used to create coverage beyond that actually provided by an employee benefit plan" as one of its reasons for rejecting an argument that the insurer and employer, sued by the employee's widow, "waived or were estopped from asserting certain arguments advanced in their opening briefs and at trial, because they were not advanced as a basis for denial of her claim or upholding that claim determination on appeal." (*Id.* at p. 1187.) The court

17

*Schonbak v. Minnesota Life* (S.D.Cal., Dec. 28, 2017) 2017 WL 10591660 (*Schonbak*), another of LINA's examples of cases rejecting claims of waiver based on employers' deduction of premiums for life insurance, involved an employee who received notice directly from the insurer that his application for supplemental life insurance had been denied due to his medical history but whose employer erroneously deducted premium payments for the declined insurance. Distinguishing *Salyers, Schonbak* held the record did not show an intentional relinquishment by the insurer of its right to require evidence of insurability, as the insurer denied the application for insurance and was unaware the employer was deducting premium payments, the employer's conduct could not be attributed to the insurer because it did not have actual or apparent authority, and the deductions were due to administrative error. (*Schonbak,* at pp. *3–*4.)

In *Affonso v. Metropolitan Life Ins. Co.* (N.D.Cal., Apr. 26, 2012) 2012 WL 1496192, the employee enrolled in a group life insurance plan after being advised by her employer's benefits representative that she was eligible for coverage of up to $1 million; a premium payment was deducted from her paycheck, she was told the insurance amount had been accepted and coverage was in force, and this confirmation was subsequently provided in writing. (*Id.* at p. *1.) Under the policy terms, however, the employee was limited to $500,000 coverage and, based on this limitation, after her death the insurer denied payment exceeding $500,000. (*Ibid.*) *Affonso* rejected claims of waiver and estoppel to assert the coverage limitation based on evidence the employee's enrollment documents stated the limitation, the

did not specify the basis for the waiver argument, but the facts that the employee affirmatively cancelled his application for insurance before it was processed and no premiums were paid to the insurer clearly distinguish *Flynn* from the present case.

18

summary plan description stated that in case of conflict, the terms of the plan documents controlled over other materials and verbal representations, and the letter confirming the employee's benefits stated that any inconsistency would be governed by the plan document. (*Id.* at pp. *5–*6.)

*Kwok v. Metropolitan Life Ins. Co.* (9th Cir. 2001) 7 Fed.Appx. 709, rejected waiver and estoppel claims based on the employer having deducted two premium payments despite knowing the employee was not "actively at work," as required for a life insurance policy to take effect. The employer had informed employees that the insurance was to replace a different life insurance policy as of a specified date for all employees "actively at work on that date (or on the first day of the month following a return to work)." (*Id.* at p. 711.) Kwok had completed an enrollment card stating the applicant had to be actively at work on the effective date in order to be covered, and defining "actively at work" to mean " 'performing my full-time regularly scheduled duties,' " and had signed a certification that he had read this information and understood the requirement. (*Ibid.*) His last day of work preceded the effective date, he died shortly after that date, and while the new insurer denied coverage, benefits were paid by the previous insurer. (*Ibid.*) In these circumstances, the Ninth Circuit held there was no "element of misconduct by the insurer or detrimental reliance by the insured." (*Ibid.*)

One thing is clear from all these cases: At least in the context of determining the effect of preconditions to effective coverage, waiver and estoppel are questions of fact. The federal cases, including those LINA relies upon, were decided on motions for summary judgment or after trials, not on the pleadings. (*Salyers, supra,* 871 F.3d 934 [trial]; *Schonbak, supra,* 2017 WL 10591660 [summary judgment]; *Yale, supra,* 2013 WL 5923073 [trial]; *Affonso v. Metropolitan Life Ins. Co., supra,* 2012 WL 1496192 [summary

judgment]; *Gaines, supra,* 329 F.Supp.2d 1198 [summary judgment]; *Kwok v. Metropolitan Life Ins. Co., supra,* 7 Fed.Appx. 709 [summary judgment].) Waiver and estoppel are normally questions of fact, and LINA's cases do not support a conclusion that these doctrines are inapplicable in the present case. We decline to hold that principles of waiver and estoppel cannot establish the existence of an effective contract of insurance *as a matter of law.*

**B.**

This leaves the question whether the second amended complaint sufficiently alleged causes of action for breach of contract against LINA. As we have said, Dones's waiver and estoppel arguments are based primarily upon conduct by the County, which Dones maintains was acting as the insurer's agent.

In *Elfstrom v. New York Life Ins. Co.* (1967) 67 Cal.2d 503 (*Elfstrom*), the California Supreme Court "held *as a matter of law* that 'the employer is the agent of the insurer in performing the duties of administering group insurance policies.' (*Id.* at p. 512.)" (*Metropolitan Life Ins. Co. v. State Bd. of Equalization* (1982) 32 Cal.3d 649, 659, quoting *Elfstrom,* at p. 659.) Among the considerations *Elfstrom* discussed in reaching this conclusion and rejecting the view that the employer acts as agent of the employee, the court found "most persuasive" that "the employee has no knowledge of or control over the employer's actions in handling the policy or its administration. An agency relationship is based upon consent by one person that another shall act in his behalf and be subject to his control. (*Edwards v. Freeman* (1949) 34 Cal.2d 589.) It is clear from the evidence regarding procedural techniques here that the insurer-employer relationship meets this agency test with regard to the administration of the policy, whereas that between the employer and its employees fails to reflect true agency. The insurer directs

20

the performance of the employer's administrative acts, and if these duties are not undertaken properly the insurer is in a position to exercise more constricted control over the employer's conduct. [¶] . . . . [I]t would be inconsistent with the actual relationship of the parties and would do violence to the traditional concept of agency to hold that the employees rather than the insurer control and direct the employer's acts in administering a policy of group insurance." (*Elfstrom,* at pp. 513–514.) Accordingly, "the employer's errors in administration are attributable to the insurer." (*Id.* at p. 505; *Amberg v. Bankers Life Co.* (1971) 3 Cal.3d 973, 979.)

Dones alleged that the County "was acting as agent for LINA in the administration of the Master Policy at all times," as well as alleging acts constituting such administration, such as informing Johnson of available options, communicating with her about and confirming her selections, deducting premium payments from her paycheck and transmitting them to LINA. These allegations, on their face, are sufficient to allege agency under *Elfstrom.* And they are further supported by one of the attachments to the second amended complaint (exhibit R), a May 8, 2018 letter from Cigna Group Insurance denying Dones's appeal, which stated that the County chose to self-administer the master policy and therefore was responsible for ensuring coverage elections were processed in accordance with the terms and conditions of the policy and the policy's effective date provision had been satisfied, for maintaining "employee-level detail and coverage data," and for timely and accurately remitting premiums.

LINA attempts to distinguish *Elfstrom* on the grounds that the insured in that case did not fail to satisfy a condition to coverage such that "it was undisputed that the supplemental coverage never existed," and that the *Elfstrom* court emphasized the record did not indicate the insured knew or

suspected she was not eligible for insurance, whereas here Johnson "was informed about the Policy's Active Service requirement—such that she knew the supplemental coverage would not take effect until she returned to Active Service."

LINA's first purported distinction is both factually erroneous and irrelevant. As to the facts, the insurer in *Elfstrom* disclaimed coverage on the ground that the insured was not eligible for insurance because she did not satisfy the policy requirements for minimum weekly hours worked and monthly earnings. (*Elfstrom, supra,* 67 Cal.2d at p. 507.) And while it is undisputed that Johnson was informed the policy had an "active service" requirement, Dones clearly disputes whether Johnson was aware and understood the meaning of the requirement. In any event, Johnson's eligibility for the insurance, while critical in other respects, is irrelevant to the question whether the County was acting as LINA's agent in administering the insurance policy.

LINA further argues that Dones only alleged in conclusory fashion that the County acted as LINA's agent and failed to plead facts establishing the existence of an agency relationship. But "[a]n allegation of agency is an allegation of ultimate fact that must be accepted as true for purposes of ruling on demurrer. (*Skopp v. Weaver* (1976) 16 Cal.3d 432, 437.)" (*City of Industry v. City of Fillmore* (2011) 198 Cal.App.4th 191, 212; *Meyer v. Graphic Arts International Union* (1979) 88 Cal.App.3d 176, 178–179.) The cases LINA offers as holding that a plaintiff "must allege *facts* demonstrating the principal's control over its agent"—*Garlock Sealing Technologies, LLC v. NAK Sealing Technologies Corp.* (2007) 148 Cal.App.4th 937, 964, and *Sonora Diamond Corp. v. Superior Court* (2000) 83 Cal.App.4th 523, 541—do not support the proffered proposition. Both cases discuss requirements for

22

*proof* of an agency relationship.  Neither says anything about pleading requirements to withstand demurrer.

LINA next points to language in the policy disclaiming an agency relationship with the County:  "The Employer and Plan Administrator are agents of the Employee for transactions relating to insurance under the Policy.  The Insurance Company is not liable for any of their acts or omissions."  "The Employer is acting as an agent of the Insured for transactions relating to this insurance.  The actions of the Employer shall not be considered the actions of the Insurance Company."  "No agent may change the Policy or waive any of its provisions."

This language is not determinative.  In determining whether an agency relationship exists, "[t]he declarations of the parties in the agreement respecting the nature of the relationship created thereby are not controlling." (*Nichols v. Arthur Murray, Inc.* (1967) 248 Cal.App.2d 610, 612–613; *Patterson v. Domino's Pizza, LLC* (2014) 60 Cal.4th 474, 501 ["the parties' characterization of their relationship in the franchise contract is not dispositive"]; *Kuchta v. Allied Builders Corp.* (1971) 21 Cal.App.3d 541, 548 [although franchise agreement stated no agency relationship created, declarations of the parties not controlling]; 3 Am.Jur.2d (2013) Agency, § 18, pp. 463–464 ["The manner in which the parties designate the relationship is not controlling, and if an act done by one person in behalf of another is in its essential nature one of agency, that person is the agent of such other notwithstanding that he or she is not so called"].)  Moreover, contractual provisions conflicting with *Elfstrom* must be viewed as invalid.  (*Pacific Std. Life Ins. Co. v. Tower Industries, Inc.* (1992) 9 Cal.App.4th 1881, 1891.)

## C.

Having concluded Dones could not rely on theories of waiver and estoppel as a matter of law, the trial court did not address whether the second amended complaint otherwise sufficiently alleged the elements of waiver and/or estoppel.  LINA does not directly address this issue, although the emphasis in its brief on notice to Johnson of the "active service" requirement makes clear its view that Johnson could not have reasonably relied on any communication or conduct by LINA or the County to indicate she had operative insurance coverage.

Dones alleged that Johnson enrolled in supplemental life insurance coverage online; received confirmation from that she had enrolled in this benefit; had premium payments deducted from her paycheck and, when her paycheck was insufficient to cover the premiums, was directed to and did pay out of pocket.  Johnson was never informed of any information missing from or other problem with her enrollment, and in fact was informed that nothing further was needed, despite LINA's and County's knowledge that she was on medical leave and the insurance policy would not take effect as long as she was on leave; was unaware of any requirement that she return to work in order to make the insurance she was paying for effective; was capable of returning to work after the policy effective date; and would have returned if she had known of the requirement.  These allegations are sufficient to support the claim of an "intentional relinquishment or abandonment of a known right" (*Bickel v. City of Piedmont, supra,* 16 Cal.4th at p. 1048) through conduct " ' "so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished" ' " (*Lynch v. California Coastal Com., supra,* 3 Cal.5th at p. 475) required to establish waiver against LINA.  The same allegations support the required elements of

24

equitable estoppel that LINA was apprised of the facts and acted in such a way that Johnson had a right to believe the insurer intended her to rely upon the assurance that coverage was in place. The other elements of estoppel, Johnson's ignorance of the true state of facts and reliance, are alleged and, as we will discuss, not conclusively refuted by the documents attached to the second amended complaint, LINA's arguments to the contrary notwithstanding.

LINA emphasizes that Johnson was notified by the brochure, the online enrollment form and other documents that the supplemental life insurance would become effective on January 1, 2017, only for employees in "active service." Most of the references to "active service," however, do not define the term. The exception is the eBenefits Information Sheet that appears as part the online enrollment form: As earlier indicated, the eBenefits Information Sheet states that an employee is considered in "active service" if he or she is "actively at work," meaning "performing [his or her] regular occupation for the Employer on a full-time basis, either at one of the Employer's usual places of business or at some location to which the Employer's business requires [him or her] to travel" or "[t]he day is a scheduled holiday, vacation day or period of Employer approved paid leave of absence, other than disability or sick leave after 7 days."

It appears from exhibit B, however, that the eBenefits Information Sheet was not part of the online enrollment form itself but rather on another screen, apparently accessible available by clicking a button on the enrollment form.[5] The exhibit, therefore, demonstrates only that the definition was

---

[5] The first page of exhibit B begins with headings, "2017 Benefits Enrollment" and "Supplemental Life Insurance," sets forth Johnson's name and salary, describes the insurance benefit and offers a list of available options for coverage amounts with directions to select one. The next three

accessible to Johnson, not that she actually saw it or knew of it. The policy itself defines "active service" as "actively at work," but Dones alleged that Johnson was not provided a copy of the policy.

Contrary to LINA's assumption, it is not apparent to us that "active service" has a single unambiguous meaning such that Johnson necessarily must have known she was not in "active service" because she was on medical leave of absence. For example, it would not necessarily be unreasonable for an employee, on medical leave but continuing to receive a paycheck, to understand "active service" as a contrast to retirement rather than to a temporary leave of absence.

LINA and the County both point out that earlier versions of the complaint alleged Johnson received a notice stating that "if the employee was not actively at work, the coverage would take effect when the employee returned to active service." The second amended complaint, by contrast, alleges it is "unknown" whether this contractual provision was included in the documentation Johnson received, further alleging that the prior allegation was "mistaken," and "after further review of documents . . . appears to be unfounded."

LINA and the County view the change in allegations as insufficiently explained and, therefore, evidence the second amended complaint is a sham pleading. Under the sham pleading doctrine, "if a verified complaint contains allegations fatal to a cause of action, a plaintiff cannot cure the defect by simply omitting those allegations in an amended pleading without

---

pages of exhibit B are paginated "1, 2, 3," each page with a footer indicating "eBenefits Information Sheet." Midway down page 3 is a link to "Return to Your Annual Benefits Open Enrollment Event" followed by the direction, "If you are ready to make your 2017 benefit choices, close this screen, make your election and click 'Continue' to resume your enrollment in eBenefits."

explanation." (*JPMorgan Chase Bank, N.A. v. Ward* (2019) 33 Cal.App.5th 678, 690 (*JPMorgan*); *Smyth v. Berman* (2019) 31 Cal.App.5th 183, 195–196 (*Smyth*).) "But amendment in this manner is allowed where a plaintiff clearly shows that the earlier pleading is the result of mistake or inadvertence." (*JPMorgan,* at p. 690.) "[T]he sham pleading doctrine 'cannot be mechanically applied.' (*Avalon Painting Co. v. Alert Lumber Co.* (1965) 234 Cal.App.2d 178, 185.) It 'is not intended to prevent honest complainants from correcting erroneous allegations or prevent the correction of ambiguous facts.' (*Hahn v. Mirda* (2007) 147 Cal.App.4th 740, 751.) Instead 'the rule must be taken together with its purpose, which is to prevent [an] amended pleading which is only a sham, when it is apparent that no cause of action can be stated truthfully.' (*Callahan v. City and County of San Francisco* (1967) 249 Cal.App.2d 696, 699; see *McGee v. McNally* (1981) 119 Cal.App.3d 891, 897) [where omission did not 'impugn[ ] the credibility of appellants' cause of action,' amendment should have been allowed].)" (*Ibid*.)

We are not convinced the sham pleading doctrine should be applied here. While the earlier allegation weakened Dones's case by acknowledging Johnson received information that more directly indicated the insurance would not go into effect if she remained on a leave of absence, it was not so conclusive as to be necessarily fatal to the cause of action, and the amendment did not alter the fundamental facts upon which the claim was based. (*Smyth, supra,* 31 Cal.App.5th at p. 196 [plaintiff whose claim depended on when tenancy ended first alleged termination of lease in 2015, then later alleged continuation under oral extension].) Nor was the explanation for the claim necessarily implausible. In *Smyth*, for example, the plaintiffs alleged they did not initially allege an oral lease extension because they first found documentary evidence of the extension after the earlier

27

complaint was filed, but the plaintiff who was allegedly party to the oral extension would have known about it regardless of any memorializing documentation. (*Smyth,* at p. 196.) Here, Dones alleged that further review of documents indicated Johnson may not have received a notice he had previously alleged she received. This explanation lacked detail, but it was not inherently implausible.

Clearly, there are factual questions as to what Johnson knew or should have known about the active service requirement and whether the conduct of LINA and the County supported a reasonable expectation that the supplemental insurance was in place and effective. We offer no opinion as to whether Dones will be able to prove his case. We conclude only that his allegations of waiver and estoppel are sufficient to withstand demurrer.

## II.

Dones argues the County is liable for the death benefit due under the supplemental insurance policy both as agent for LINA and directly, under a theory of implied contract. As to the former, Dones argues that while an agent is not personally liable for breach of contract by a disclosed principal, the agent is liable where the principal was not disclosed and here, Johnson was informed the coverage would be provided by Cigna, not LINA. The County is liable under a theory of implied contract, Dones maintains, based on its conduct in deducting premiums and notifying Johnson she was covered despite its awareness of her employment status.

## A.

Although the second amended complaint sufficiently alleged the County acted as LINA's agent in administering the life insurance policy for purposes of determining LINA's liability, whether the County can be held liable is a different question. "[A]n agent is ordinarily not liable on the

28

contract when he acts on behalf of a disclosed principal." (*Stoiber v. Honeychuck* (1980) 101 Cal.App.3d 903, 929; *Filippo Industries, Inc. v Sun Ins. Co.* (1999) 74 Cal.App.4th 1429, 1442.)

Dones argues that the County is liable for the supplemental life insurance benefit here because it did not disclose the principal for whom it was acting in offering the insurance:  The eBenefits Information Sheet stated the supplemental life insurance coverage would be provided by Cigna, but in fact the policy was issued by LINA.

Dones's argument is based on principles stated in *W.W. Leasing Unlimited v. Commercial Standard Title Ins. Co.* (1983) 149 Cal.App.3d 792, 795–796:  " 'In order for an agent to avoid personal liability on a contract negotiated in his principal's behalf, he must disclose not only that he is an agent but also the identity of his principal, regardless of whether the third person might have known that the agent was acting in a representative capacity.  It is not the third person's duty to seek out the identity of the principal; rather, the duty to disclose the identity of the principal is on the agent.  The disclosure of an agency is not complete for the purpose of relieving the agent from personal liability unless it embraces the name of the principal; without that, the party dealing with the agent may understand that he intended to pledge his personal liability and responsibility in support of the contract and for its performance.  Furthermore, the use of a tradename is not necessarily a sufficient disclosure of the identity of the principal and the fact of agency so as to protect the agent against personal liability.' (3 Am.Jur.2d Agency, § 320, pp. 676–678, and see the authority there collected.)"

The rationale for imposing liability under a contract on the agent for an unidentified principal is "to make sure that a party entering a contract knows

29

precisely with whom it is dealing and protects a party from unknowingly being required to do business with an entity incapable of meeting its contractual obligations." (*UBS Securities, Inc. v. Tsoukanelis* (S.D.N.Y. 1994) 852 F.Supp. 244, 247–248.) "When a third party has notice that an agent deals on behalf of a principal but does not have notice of the principal's identity, it is not likely that the third party will rely solely on the principal's solvency or ability to perform obligations arising from the contract. Without notice of a principal's identity, a third party will be unable to assess the principal's reputation, assets, and other indicia of creditworthiness and ability to perform duties under the contract. If an agent provides reassurances about the principal's soundness only generally or describes the principal, the third party will be unable to verify such claims without notice of the principal's identity." (Rest.3d Agency, § 6.02, com. b., p. 30.)

Application of these principles in the present case would make no sense. As an employee purchasing life insurance through a group plan offered by her employer, Johnson was not in the same position as an individual negotiating a commercial transaction with the agent for a seller of goods, lessor of property or the like. Johnson did not directly enter into a contract with LINA; if the insurance policy became effective, she became a party to it pursuant to the terms of an existing master contract between LINA and County (through the Group Insurance Trust for Employers in the Public Administration Industry). Johnson did not negotiate her contract of insurance or choose which company to deal with; she chose only whether to take advantage of the insurance benefit offered by her employer. She could not plausibly have viewed her selection of the life insurance benefit as a contract for the County itself to provide the actual insurance: The County is not an insurer.

30

Moreover, the second amended complaint alleges that LINA is a subsidiary of Cigna. Indeed, the correspondence by which Board approved the insurance benefits to be offered to County employees for 2017 and 2018 is on CIGNA letterhead.[6] It does not appear there was anything deceptive about the County's identification of the insurance carrier. If Johnson's insurance policy went into effect, the entity liable for improper denial of benefits would be LINA, not the County.

**B.**

Dones also argues the County is directly liable on a theory of implied contract. The second amended complaint alleges the action for breach of implied contract against both LINA and the County. Drawing on the principle that "the very heart" of an implied contract "is an intent to promise" (*Division of Labor Law Enforcement v. Transpacific Transportation Co.* (1977) 69 Cal.App.3d 268, 275), Dones argues the County "evidenced an intent to promise over and over, with each paycheck which informed [Johnson] that the benefits were in effect and with its demand for additional premiums (which she paid) when the paycheck would not cover them." Without further specifying the terms of the alleged implied contract, Dones argues the existence of such a contract is a question of fact and the County is estopped from "denying the policy."

"A contract is either express or implied. (Civ. Code, § 1619.) The terms of an express contract are stated in words. (Civ. Code, § 1620.) The existence and terms of an implied contract are manifested by conduct. (Civ. Code, § 1621.) The distinction reflects no difference in legal effect but merely in the mode of manifesting assent." (1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 102, p. 144.) Accordingly, a contract implied in fact

---

[6] See footnote 7, *post*, at page 32.

"consists of obligations arising from a mutual agreement and intent to promise where the agreement and promise have not been expressed in words." (*Silva v. Providence Hospital of Oakland* (1939) 14 Cal.2d 762, 773.)

"It is settled that the mode of contracting vested in a state agency is the measure of its power to contract and a contract made in disregard of the established mode is invalid." (*Seymour v. State of California* (1984) 156 Cal.App.3d 200, 203; *G. L. Mezzetta Inc. v. City of Am. Canyon* (2000) 78 Cal.App.4th 1087, 1093–1094 (*Mezzetta*) ["because the statutes in question specifically set forth the ways in which the City may enter into contracts, any other methods of contract formation—even though not explicitly prohibited by the statutes—are invalid"].) Section 3.64.030 of the County's Administrative Code provides, "The [Board] shall approve health and welfare benefit plans for coverage of eligible persons and their spouses (or domestic partners effective 2/1/96) and eligible dependents." Documents the trial court took judicial notice of establish that the County human resources services recommended the Board approve specified benefits including the supplemental life insurance benefit, and the Board did so.[7]

---

[7] On December 5, 2016, the interim director of the County's human resources services recommended that the Board "[a]pprove the offering of CIGNA Basic Life and Voluntary Supplemental Life and AD&D, Short and Long Term Disability Insurance plans and rates, effective January 1, 2017 through December 31, 2018" and "[a]uthorize the President to sign the 2017 contract amendments for CIGNA Basic Life and Voluntary Supplemental Life and AD&D, Short and Long Term Disability Insurance plans and rates, effective January 1, 2017 through December 31, 2018." A November 5, 2016 letter on CIGNA letterhead confirming "the County of Alameda's acceptance of Cigna's Group Term Life, AD&D and Disability renewal rates effective January I. 2017," was signed "Accepted" by Supervisor Scott Haggerty on January 4, 2017, and "Approved as to Form" by County counsel.

Dones did not allege that the Board authorized any life insurance benefit other than that negotiated by CIGNA and the County's human resources services. The approved benefit was life insurance provided by LINA to County employees pursuant to the master policy between LINA and the County. As addressed above, Dones alleged that the County's conduct and representations, in its capacity as agent for LINA, waived or estopped LINA from asserting its right to enforce the policy's active service precondition to coverage. But Dones has not explained how he alleged, or could allege, an implied contract for the County to provide life insurance in any manner other than through the policy issued by LINA, under which benefits, if owed, are payable by LINA, not the County.

Dones's argument that " '[a] county may be bound by an implied contract under California law if there is no legislative prohibition against such arrangements, such as a statute or ordinance' " (*San Mateo Union High School Dist. v. County of San Mateo* (2013) 213 Cal.App.4th 418, 439 quoting *Retired Employees Assn. of Orange County, Inc. v. County of Orange* (2011) 52 Cal.4th 1171, 1176) is true as an abstract proposition, but ignores the County's Administrative Code. By requiring the Board's approval of employee benefit plans, the Administrative Code necessarily prohibits provision of employee benefits not approved by the Board. (See *Mezzetta, supra,* 78 Cal.App.4th at p. 1094 [statute and municipal code provisions requiring mayor to sign written contracts, giving city manager same authority as mayor to sign such contracts when approved by city council and requiring city attorney to approve the form of contracts implicitly require that all city contracts be in writing, not oral].)[8] In requiring the Board to

---

[8] Dones takes issue with the County's characterization of the deductions from Johnson's paycheck for supplemental life insurance premiums as the "mistake of a clerk in the County's payroll or benefits

33

approve employee benefit plans, the County's Administrative Code ensures a number of individuals will be involved in making a decision which will affect the lives of County employees. " ' "No single individual has absolute authority to bind the [County]." ' " (*Mezzetta, supra,* 78 Cal.App.4th at p. 1094, quoting *First Street Plaza Partners v. City of Los Angeles* (1998) 65 Cal.App.4th 650, 669.) Conduct by a County employee such as setting up payroll deductions and issuing confirmations of open enrollment benefit elections cannot operate to create an implied contract for provision of benefits in a manner contrary to legislative constraints.

Dones's resort to estoppel fares no better. Aside from the absence of allegations that the Board approved provision of life insurance benefits to Johnson other than those available through the LINA policy, or that a contract for the County itself to provide life insurance existed, equitable estoppel " ' "ordinarily will not apply against a governmental body except in unusual instances when necessary to avoid grave injustice and when the result will not defeat a strong public policy. [Citations.]" [Citation.]' " (*Schafer v. City of Los Angeles* (2015) 237 Cal.App.4th 1250, 1262, quoting *Steinhart v. County of Los Angeles* (2010) 47 Cal.4th 1298, 1315.) When equitable estoppel is asserted against the government, in addition to the basic elements of equitable estoppel described earlier, "the court must weigh the policy concerns to determine whether the avoidance of injustice in the

department." Dones asserts the complaint did not allege a mistake but rather alleged "the County knew of [Johnson's] employment status and took the premiums and informed her she had the benefit anyway"; LINA and County maintain "mistake," meaning an inadvertent taking of "misguided or wrong" action, is appropriate because Dones did not allege the County intentionally deducted premiums "as part of a scheme to deceive Johnson." The disputed characterization is not relevant for purposes of this opinion.

particular case justifies any adverse impact on public policy or the public interest." (*Schafer,* at p. 1261.)

The trial court found the second amended complaint did not plead the requisite level of injustice necessary for equitable estoppel against the County, "only vaguely claiming plaintiff was 'significantly harmed' and was forced to '[retain] legal counsel.' (SAC ¶¶ 94, 97.)" The two paragraphs cited by the trial court appear in the third cause of action for breach of the implied covenant of good faith and fair dealing, which is alleged against LINA alone. Also under the third cause of action, Dones alleges that LINA's unreasonable conduct caused him to lose the supplemental benefit of $230,000 for which he and Johnson paid, and to suffer "extreme emotional anguish and significant financial hardship . . . according to proof."

The loss of a significant amount of expected income is, of course, of considerable consequence to Dones. Like the trial court, however, we are convinced it does not rise to the level of injustice required for equitable estoppel against a governmental entity. A voluntary, employee-paid supplementary life insurance policy for which Johnson paid premiums for at most seven months is simply not the unusual case of grave injustice in which estoppel against the government can succeed.[9]

Additionally, "[e]stoppel against the government may be applied 'only in the most extraordinary case where the injustice is great and the precedent

---

[9] Dones's equitable estoppel argument is based almost entirely on *Alameda County Deputy Sheriff's Assn. v. Alameda County Employees' Retirement Assn.* (2018) 19 Cal.App.5th 61, in which, he says, the County " 'argue[d] strenuously' the same arguments it makes in the present case and each was rejected." This case was recently reversed by the California Supreme Court, which rejected the equitable estoppel claim. (*Alameda County Deputy Sheriff's Assn. v. Alameda County Employees' Retirement Assn.* (2020) 9 Cal.5th 1032, 1071–1074.)

set by the estoppel is narrow.' " (*Clary v. City of Crescent City* (2017) 11 Cal.App.5th 274, 285, quoting *Smith v. County of Santa Barbara* (1992) 7 Cal.App.4th 770, 775.)  Permitting a claim of estoppel against the County based on its administration of an employee's voluntary supplemental life insurance application as alleged here would set a potentially broad precedent, undermining the public policy served by limiting the County's contractual liability to contracts entered in accordance with legislatively prescribed procedures.  The County's role with respect to the life insurance policy was as agent for LINA; Dones's claim, if any, is against LINA.

## DISPOSITION

The judgment is affirmed as to the County.  As to LINA, the judgment is reversed, the order sustaining the demurrer without leave to amend is vacated and the matter is remanded to the trial court for further proceedings consistent with this opinion.

_____
Kline, P.J.

We concur:


_____
Stewart, J.


_____
Miller, J.


*Dones v. Cigna Life Insurance Company of North America et al.* (A157662)

37

Trial Court:                        Alameda County Superior Court

Trial Judge:                        Hon. Paul D. Herbert

Attorneys for Appellant:            Turner Friedman Morris & Cohan
                                    Jonathan M. Deer

                                    Blakeman Law
                                    Benjamin Blakeman


Attorneys for Respondent:           Moscone Emblidge & Reubens
                                    G. Scott Emblidge
                                    Erin H. Reding

                                    Meserve Mumper & Hughes
                                    Nicole Y. Blohm
                                    Charles K. Chineduh