Filed 3/20/26  Morris v. Bd. of Trustees of the Cal. State U. CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

|  |  |
|---|---|
| MATTHEW MORRIS, <br><br>     Plaintiff and Appellant, <br><br> v. <br><br> BOARD OF TRUSTEES OF THE CALIFORNIA STATE UNIVERSITY et al., <br><br>     Defendants and Respondents. | A171548 <br><br> (Alameda County Super. Ct. No. 23CV028627) |

Matthew Morris appeals from a judgment after the trial court sustained without leave to amend the demurrer of the Board of Trustees of the California State University (CSU) and various individual defendants (with CSU, "CSU Defendants").[1] As best we can determine from Morris' briefing, he contends the trial court erred primarily because it accorded CSU immunity to which it was not entitled.  Although the trial court's immunity ruling was partially incorrect, as CSU Defendants concede, we agree with them that the trial court's order sustaining the

---

[1] The individual defendants are Cathy Sandeen, Terri LaBeaux, Mitch Watnik, Maureen Scharberg, Danvy Le, Amy Below, Luz Calvo, and Jerome Narvaez.

1

demurrer was nonetheless legally correct for other reasons. Morris' other arguments fail to demonstrate reversible error, so we will affirm.

## BACKGROUND

According to Morris' operative complaint, he is a bisexual, African American man who was a student at California State University, East Bay. In August 2020, Morris filed a complaint against two fellow students for sexual harassment and assault under title IX of the Education Amendments of 1972 (20 U.S.C. § 1681 et seq. (Title IX)). CSU did not fairly or thoroughly investigate Morris' complaint, and it lost or destroyed evidence and failed to contact witnesses Morris named. CSU discredited his allegations based on unsubstantiated information it learned after contacting Morris' previous school.[2]

Morris began working for CSU as a lead research assistant in January 2021. His supervisor was Dr. Anndretta Wilson, a professor of Ethnic Studies, Black Studies, Feminism, and Community Engagement. Dr. Wilson refused to meet with Morris to prepare for group discussions held over Zoom and bullied and belittled him during the discussions. Dr. Wilson refused to discuss the work Morris brought to the meetings and made comments to put him down because of his race and sex. Dr.

---

[2] Morris mentions various incidents that appear to provide the basis for his Title IX complaint. The individual students named in these allegations were also named as defendants in Morris' complaint. The students are not parties to this appeal and the specifics of Morris' Title IX complaint and CSU's investigation of it have no apparent bearing on Morris' causes of action, so we do not discuss them.

2

Wilson conspired to undermine Morris' position by providing other members of the workgroup advantageous information and support. Other members were encouraged to conceal information about school presentations and their relationships with Dr. Wilson.

Morris later discovered that Dr. Wilson had a close relationship with the students Morris had named in his Title IX complaint. Morris believed the harassment he experienced was retaliation for the Title IX complaint.

Dr. Wilson failed to pay Morris throughout his employment, and CSU failed to pay Morris scholarships he had been awarded in 2020 and 2021.

In June 2021, Morris was notified by email that he was administratively disqualified from working in his position. In August 2021, Morris appealed the decision and it was denied.

As of January 2022, CSU's Board of Directors had not made the agenda or minutes from their meetings available to the public.

In March 2022, Morris served a demand letter twice on CSU. CSU did not respond.

On March 3, 2023, Morris filed his initial complaint based on these allegations, naming CSU, CSU employees, and certain students as defendants. After the trial court sustained CSU Defendants' demurrer, Morris amended his complaint to state additional causes of action and add defendants. Some of the newly added defendants were federal officials, and they removed the case to federal court. (*Morris v. Bd. of Trs. of the Cal. State*

3

*Univ.* (N.D.Cal. Jan. 2, 2024, No. 23-cv-04562-HSG) 2024 U.S.Dist. LEXIS 490, at *3 & fn. 2.)  The federal district court granted a motion to dismiss the federal causes of action for failure to state a claim and granted leave to amend.  (*Morris v. Bd. of Trs. of the Cal. State Univ.* (N.D.Cal., Apr. 2, 2024, No. 23-CV-04562-HSG) 2024 U.S.Dist. LEXIS 60624.)  The court did not address the defendants' arguments for dismissing Morris' state law claims.  (*Id.* at *9–*10.)

Morris' second amended complaint, filed in early May 2024, deleted the federal causes of action and the federal defendants from his first amended complaint, leaving 27 causes of action and 22 defendants.  This complaint added allegations regarding events in 2023.  Morris alleged that he had reported ongoing retaliation to the Title IX coordinator in February 2023.  In May 2023, he had requested copies of his personnel, payroll, and timesheet records.  A CSU employee asked Morris to create his own paystub and gave him incorrect and incomplete records.  A CSU department chair gave Morris incorrect work information and failed to provide any official documentation regarding Morris' personnel, payroll, and timesheet records.  Morris was still unable to take classes as of June 2023 despite being reinstated as a student.

While the case was still in federal court, CSU Defendants filed a statement in the trial court for a scheduled case management conference.  This statement noted that CSU Defendants expected the case to be remanded.  The statement also asserted that there might be discovery issues because Morris

4

was overdue on code-compliant discovery responses.  The trial court continued the case management conference.  The federal district court remanded the case a few weeks later.

Once the case was back in the trial court, CSU Defendants conferred with Morris regarding a demurrer to the second amended complaint that they intended to file.  CSU Defendants ultimately filed the demurrer.  In support of their demurrer, CSU Defendants requested judicial notice of a government claim Morris had submitted to CSU in February 2023 and CSU had denied on March 8, 2023, for being untimely.

Morris moved ex parte to continue the demurrer hearing because of a medical condition.  The trial court continued the hearing by over a month, until September 29, 2024.

On September 12, 2024, Morris filed an ex parte application for leave to amend his complaint.  Morris said that after meeting and conferring with the defendants he wanted to make certain clarifications they had requested.  He also said he had been provided new evidence, had been subject to further retaliation that constituted a continuing tort or violation, and wanted to add causes of action.  Morris did not attach a proposed amended complaint.  In discussing the harm the matter had caused him, Morris said that while caring for his son, Morris had contracted COVID and then a respiratory infection.  Morris attached a medical certification stating that he had been unable to work from September 5 to 10, 2024.

On September 19, 2024, CSU Defendants filed a notice informing the court that they had not received an opposition to

5

their demurrer. They also urged the court to deny Morris' request to amend his complaint because it was procedurally improper and there was no indication that Morris could amend his pleading to state a viable claim. That same day, the trial court denied Morris' ex parte request for leave to amend because, among other procedural defects, Morris had not included a declaration stating that defendants had been properly notified of his request.

Morris filed a response to CSU Defendants asking the court to ignore their notice and allow his responses because, among other things, he had good cause for an extension due to his illnesses. He accused the court of refusing to file anything from him while the case was in federal court but accepting CSU's case management statement, which he claimed was not served on him, before the case was actually remanded.

On September 23, 2024, the trial court posted a tentative ruling proposing to grant CSU Defendants' request for judicial notice and sustain the demurrer without leave to amend. The trial court adopted its tentative ruling. It ruled that judicially noticeable facts established that Morris had failed to comply with applicable claims presentation requirements and that defendants had statutory immunity to all of Morris' causes of action.

## DISCUSSION

### I. Standard of Review and Principles of Appellate Procedure

The standard of review is well established. " 'We give the complaint a reasonable interpretation, reading it as a whole and

6

its parts in their context.  [Citation.]  Further, we treat the demurrer as admitting all material facts properly pleaded, but do not assume the truth of contentions, deductions or conclusions of law.' " (*County of Santa Clara v. Superior Court* (2023) 14 Cal.5th 1034, 1041.)  " 'We may also consider matters subject to judicial notice.' " (*Capito v. San Jose Healthcare System, LP* (2024) 17 Cal.5th 273, 280.)  " 'When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action.  [Citation.]  And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment:  if it can be, the trial court has abused its discretion and we reverse.' " (*County of Santa Clara*, at p. 1041.)  The plaintiff has the burden of proving a reasonable possibility of curing the defect by amendment.  (*People ex rel. Allstate Ins. Co. v. Discovery Radiology Physicians, P.C.* (2023) 94 Cal.App.5th 521, 532–533.)

Several other principles guide and constrain our consideration of Morris' appeal.  First, "it is a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment.  [Citations.]  'This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' " (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609.)  "[W]e may affirm on any ground supported by the record [citation], including grounds not raised

7

by the respondent, and even if the respondent does not file a brief [citations].  'Thus, respondent can assert a new theory on appeal in order to establish that the judgment was correct on that theory unless doing so would unfairly prejudice appellant by depriving appellant of the opportunity to litigate an issue of fact.' " (*J.R. v. Electronic Arts Inc.* (2024) 98 Cal.App.5th 1107, 1115, fn. 2, italics omitted.)

Second, " '[i]n order to demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record.' " (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 153.)  The Rules of Court applicable to appellate briefs play a role in determining which issues an appellant has raised.  (See *ibid.*)  Among other things, those rules require every argument to be stated "under a separate heading or subheading summarizing the point" and supported by argument and, if possible, authority. (Cal. Rules of Court, rule 8.204(a)(1)(B).)  The rules also require that factual statements, wherever in a brief they appear, be supported by citations to the volume and page number in the record.  (Cal. Rules of Court, rule 8.204(a)(1)(C); *Alki Partners, LP v. DB Fund Services, LLC* (2016) 4 Cal.App.5th 574, 590, fn. 8.)  We will consider and address arguments that comply with these requirements.  But we deem forfeited and will not consider loose or stray arguments not set out in a heading (*Provost v. Regents of University of California* (2011) 201 Cal.App.4th 1289, 1294) and "any factual assertion unsupported by record citation at the point where it is asserted" (*Alki Partners*, at p. 590, fn. 8).

8

We will also " 'disregard conclusory arguments that are not supported by pertinent legal authority or fail to disclose the reasoning by which the appellant reached the conclusions he wants us to adopt.' " (*United Grand*, at p. 153.)

Third, we will not consider points Morris raises for the first time in his reply brief. (*Doe v. McLaughlin* (2022) 83 Cal.App.5th 640, 653.) "This rule is based on considerations of fairness: withholding a point until the reply brief deprives ' "the respondent the opportunity to answer it or require[s] the effort and delay of an additional brief by permission." ' " (*Id.* at p. 654.)

We recognize that Morris is representing himself in this appeal. But a party proceeding pro se is " ' "held to the same restrictive rules of procedure as an attorney" ' " and is not entitled to greater consideration than other litigants. (*First American Title Co. v. Mirzaian* (2003) 108 Cal.App.4th 956, 958, fn. 1.)

## II.   Analysis

### A. Failure to State a Claim

Morris' most substantial argument is that the trial court incorrectly relied on *Bitner v. Department of Corrections & Rehabilitation* (2023) 87 Cal.App.5th 1048 as authority for ruling that Government Claims Act (Gov. Code[3], § 810 et seq.) immunity bars all of his causes of action. Morris points out that *Bitner* concerns Government Code section 844.6 immunity to claims by prisoners and argues it does not apply to claims by plaintiffs such

---

[3] All further undesignated statutory references are to the Government Code.

as himself.  (*Bitner*, at p. 1058.)  CSU Defendants concede that *Bitner* is not precisely on point and section 844.6 specifically is inapplicable here.  They further admit that Government Claims Act immunity does not bar all of Morris' causes of action.  But they argue that the trial court's judgment is nonetheless correct because, whether because of immunity or some other reason, Morris' complaint does not state a claim under any theory.  We agree with CSU Defendants that, even if we disregard immunity, Morris' complaint fails to state facts sufficient to constitute a cause of action under any theory.

## 1.  Claims Presentation Requirement

We begin with the issue of claims presentation under the Government Claims Act, which the trial court cited as an independent reason for sustaining the demurrer.  With certain exceptions, no suit may be brought against CSU for "money or damages based upon an express contract or for an injury for which the Trustees of the California State University is liable" (§ 905.9) until the plaintiff has presented a written claim to CSU and CSU has either acted upon it or the claim is deemed to have been denied (§ 945.4).  With an exception not relevant here, causes of action against individual public employees for acts in the scope of their employment are barred "if an action against the employing public entity for such injury is barred" for failure to comply with the claims presentation requirements.  (§ 950.2.)  "The [Government] Claims Act does not apply, however, to nonpecuniary actions, 'such as those seeking injunctive, specific or declaratory relief.' "  (*Canova v. Trustees of Imperial Irrigation*

10

*Dist. Employee Pension Plan* (2007) 150 Cal.App.4th 1487, 1493.) It also does not apply to claims under the California Fair Employment and Housing Act (§ 12900 et seq. (FEHA)). (*Garcia v. Los Angeles Unified School Dist.* (1985) 173 Cal.App.3d 701, 710–711.)

Section 911.2, subdivision (a) requires a plaintiff to present a claim within one year, at the latest, after the claim accrues. Each cause of action in a complaint " ' "must [be] reflected in a timely claim. In addition, the factual circumstances set forth in the written claim must correspond with the facts alleged in the complaint; even if the claim were timely, the complaint is vulnerable to a demurrer if it alleges a factual basis for recovery which is not fairly reflected in the written claim." ' " (*Gong v. City of Rosemead* (2014) 226 Cal.App.4th 363, 376.) "[F]ailure to allege facts demonstrating or excusing compliance with the claim presentation requirement subjects a claim against a public entity to a demurrer for failure to state a cause of action." (*State of California v. Superior Court* (2004) 32 Cal.4th 1234, 1239.) "If a plaintiff alleges compliance with the claims presentation requirement, but the public records do not reflect compliance, the governmental entity can request the court to take judicial notice under Evidence Code section 452, subdivision (c) that the entity's records do not show compliance." (*Gong*, at p. 376.)

The trial court correctly granted judicial notice of CSU's records showing Morris submitted a claim that CSU received on March 6, 2023. The claim incorporated by reference a demand letter his counsel had sent to CSU in March 2022.

11

This claim was not timely, as CSU determined. Because Morris signed the claim form in late February 2023, it could only have been timely to support causes of action that accrued between February 2022 and February 2023. Morris' complaint primarily concerns events between late 2020 and January 2022, since it alleges that CSU failed to properly or thoroughly investigate his Title IX complaint and failed to pay his scholarships in 2020 and 2021, Dr. Wilson discriminated against and harassed him and failed to pay his wages between January and June 2021, he was administratively disqualified from his position in June 2021, CSU denied his appeal in August 2021, and CSU failed to release the minutes of its board meetings as of January 2022. None of these events took place between February 2022 and February 2023, so Morris' March 6, 2023 claim cannot support any causes of action based on them. Morris' complaint further alleges that Morris was still unable to take classes as of June 2023 and that in May 2023 CSU failed to give him correct and complete personnel, payroll, and timesheet records. These events post-date Morris' claim, so Morris cannot state causes of action subject to the claims filing requirement based on these events, either.

Morris appears to suggest that the March 2022 letter satisfied the claim requirement, but this is incorrect. Leaving aside procedural defects, as a matter of substance the letter only clearly alleges a claim for violation of the Brown Act and does not set out the factual basis for the other causes of action that Morris alleges in his complaint. The first paragraph of the letter states

12

Morris had retained counsel "to prepare this cease and desist correspondence, put CSU on notice of Brown Act (section 54950.5 et seq.) violations, demand to cure said violations and make a monetary demand to resolve the matter." The letter goes on to state that Morris was majoring in political science and wanted to be a part of that department but CSU had disqualified him in retaliation for voicing and asserting serious concerns with CSU's failure to follow legal obligations. Aside from the Brown Act, the letter never identifies those obligations CSU failed to follow, nor does it allege that Morris was an employee who suffered retaliation or unpaid wages. Later in the letter, a list of demands includes requests for Dr. Wilson to be fired for harassment and defamation and other employees to be fired from CSU's Title IX department. But the letter never provides any facts to support these demands.

Because Morris failed to timely file a claim alleging the facts on which his complaint is based, we agree with CSU Defendants that Government Code section 945.4 bars all of his causes of action except for those based on FEHA and those based on the Brown Act to the extent that Morris seeks injunctive or declaratory relief. CSU Defendants do not contend that Morris' wage claims are barred, presumably based on authority such as *Loehr v. Ventura County Community College Dist.* (1983) 147 Cal.App.3d 1071, 1080. *Loehr* discussed section 905, which requires presentment of all claims for "money or damages against local public entities" but in subdivision (c) excepts wage claims against local public agencies from the pre-complaint claims

13

presentation requirement applicable to such entities. (See *Loehr*, at p. 1080.) Section 905.9 uses similarly broad language, requiring presentment of "all claims against the California State University for money or damages based upon an express contract or for an injury" for which CSU is liable, but it has no exceptions. Morris offers no reason to think that his wage claims are exempt from this provision, so his failure to present those claims bars his suit on them.

## 2. Remaining Causes of Action

Although Government Code section 945.4 does not bar Morris' FEHA causes of action and his Brown Act causes of action for declaratory or injunctive relief, those causes of action are not viable for other reasons.

The Brown Act statutes Morris cites in his complaint apply only to local public agencies. (§§ 54951, 54952, 54954.2, 54956.) CSU is a constitutionally authorized state agency, not a local public agency. (*City and County of San Francisco v. Regents of University of California* (2019) 7 Cal.5th 536, 545.)

This leaves only Morris' FEHA claims for discrimination and harassment based on race, sexual orientation and marital status.[4] At the pleading stage, a plaintiff must " 'set forth the

---

[4] Morris' complaint also alleges that CSU failed to prevent its employees' harassment and retaliation based on race, sexual orientation, and marital status. But the only harassment or retaliation by an employee alleged in the complaint is Dr. Wilson's conduct, and CSU is strictly liable for Dr. Wilson's conduct because she was his supervisor. (*Bailey v. San Francisco Dist. Attorney's Office* (2024) 16 Cal.5th 611, 635 (*Bailey*).) The

14

essential facts of his case with reasonable precision and with particularity sufficient to acquaint a defendant with the nature, source and extent of his cause of action.' " (*Ludgate Ins. Co. v. Lockheed Martin Corp.* (2000) 82 Cal.App.4th 592, 608.) To plead a FEHA intentional discrimination claim, a plaintiff must allege facts showing he was "a member of a protected class; was performing competently in the position he held, and suffered an adverse employment action such as termination or demotion; and that other circumstances suggest a discriminatory motive." (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 885.) To plead a claim for racial, sexual, or marital status harassment, an employee must allege facts showing he or she was subjected to harassing conduct that was (1) unwelcome; (2) because of race, sexual orientation, or marital status; and (3) sufficiently severe or pervasive to alter the conditions of employment and create an abusive work environment. (See *Bailey*, *supra*, 16 Cal.5th at p. 627 [racial harassment].) These standards together mean that Morris must allege facts to acquaint CSU Defendants with the general conduct that he believes constituted discrimination or a hostile work environment.

Morris' complaint does not meet this standard. The complaint is a confusing jumble of allegations about conduct by individual students before CSU employed Morris, staff members who investigated that harassment, and his supervisor once Morris began employment as a research assistant. We will not

---

failure to prevent allegations therefore add nothing to the discrimination and harassment causes of action.

15

sift and parse the particulars of those allegations to determine which allegations satisfy the elements of the FEHA claims because Morris' briefing offers us no assistance in the endeavor. Suffice it to say that we see no factual allegations sufficient to support the key elements of discriminatory motive for the discrimination claims or sufficiently severe or pervasive conduct to create a hostile work environment for the harassment claims. (See *Bailey*, *supra*, 16 Cal.5th at p. 631, fn. 6 [single epithet can create hostile work environment, depending on the totality of the circumstances in which the epithet is used].) After CSU Defendants argued in their respondents' brief that Morris had failed to allege facts to support any FEHA causes of action, Morris still offered no rejoinder on reply to demonstrate that his complaint is sufficient or that he could amend it to make it so. Morris' briefing on appeal is therefore insufficient to carry Morris' burden as the appellant to demonstrate that his complaint alleges facts to constitute his FEHA causes of action.

### B. Other Arguments for Reversal

Having determined that the trial court correctly sustained CSU Defendants' demurrer to Morris' complaint, in part for other reasons that it provided in its ruling, we turn to Morris' other arguments for reversal of the judgment.

### 1. Hearing

Morris contends the trial court erred by holding a hearing on the demurrer even though it was aware that he could not attend, and accepting evidence that was prejudicial to him and that the court used to dismiss his case. But Morris cites nothing

16

to show that he ever affirmatively asked the trial court to defer its consideration of the demurrer. Morris was aware of and able to follow the correct procedure for requesting a continuance, since he had succeeded with an ex parte request for a continuance a month earlier. But he filed no other request to continue the demurrer hearing. Morris points out that he mentioned his medical issues in his ex parte request for leave to amend his complaint before the trial court ruled on the demurrer. But he does not address, much less show error in, the trial court's ruling that his ex parte request was defective for, among other things, failing to show proper service of the request on the defendants. Nor does he cite any authority making a request to amend, defective or otherwise, a basis for deferring consideration of a demurrer when Morris never affirmatively requested that relief. The same is true of Morris' reference to the need for an extension in his response to CSU Defendants' notice of nonreceipt of opposition to their demurrer. Additionally, Morris cites nothing in the record to show that the trial court received any evidence at the hearing on the demurrer that Morris contends took place. There is no record of the oral proceedings at any such hearing. So far as we can tell from the clerk's transcript and case register, the trial court simply adopted its tentative ruling when Morris failed to contest it.

Morris notes that he sought leave to amend his complaint to address one of CSU Defendants' concerns, raised in a meeting and conference before they filed their demurrer, that the second amended complaint failed to allege facts to show compliance with

the FEHA requirement that he exhaust his administrative remedies before filing suit. Even if this were correct, Morris cites no authority to support his implicit contention that CSU Defendants were obligated to accept his offer to amend the complaint a third time or were precluded from raising any other arguments in a demurrer.

### 2. Waiver of immunity

Morris contends that CSU Defendants were not entitled to immunity because they were not engaged in a protected activity, CSU Defendants waived their claim to immunity, and federal law prevents CSU Defendants from asserting immunity. These arguments have no merit, but we need not examine them in detail in light of our conclusion, *ante*, that Morris' complaint fails to state facts sufficient to constitute a cause of action regardless of whether immunity applies.

### 3. Federal Law Arguments

Morris devotes considerable space in his opening brief to arguments about the Civil Rights Act of 1964, Title IX, 42 U.S.C. section 1983, the Eighth Amendment to the United States Constitution, and other federal law, as well as a description of the qualifications of an expert witness regarding damages under federal law. As best we can understand them, these arguments have no apparent bearing on the trial court's ruling on Morris' complaint, which alleges only state law causes of action. These arguments do not justify reversal of the judgment.

Morris accuses CSU Defendants of abuse of process for filing a case management statement in the trial court before the

case was remanded from federal court. He supports his accusation with assertions that CSU Defendants filed the statement without serving him with it, the trial court held a case management hearing without notifying him, and the trial court issued a case management order despite preventing Morris from filing documents while the case was pending in federal court.

The record contains a proof of service of CSU Defendants' case management statement on Morris, which contradicts Morris' claim of lack of service. Morris cites nothing in the record to support his assertion that he was prevented from filing documents in the trial court or explain what documents he attempted to file. We perceive no impropriety in the trial court issuing a case management order requesting an update on the case to determine whether to dispose of the case records, and Morris offers no authority to support his argument that the trial court lacked jurisdiction to request or consider the update. And in any event, Morris cites nothing to demonstrate any prejudice from CSU Defendants' case management statement or the trial court's case management conference. Morris notes that CSU Defendants' case management statement predicted that there might be discovery issues because Morris was overdue on code-compliant discovery responses. But this statement has no bearing on the trial court's later ruling on CSU Defendants' demurrer. Nor was it prejudicial, given our conclusion *ante* that the trial court correctly sustained that demurrer as a matter of law.

19

### 4. Racial Justice Act

Morris points out that the Legislature enacted Penal Code section 745 as part of the Racial Justice Act (Stats. 2020, ch. 317) to eliminate racial bias in criminal cases. Morris' complaint is civil, not criminal, so the Racial Justice Act does not apply. Morris suggests that the trial court was biased because it ruled that there was no reasonable possibility that he could amend his complaint to state a cause of action. Adverse rulings, even erroneous ones, are not evidence of apparent or actual bias. (*Brown v. American Bicycle Group, LLC* (2014) 224 Cal.App.4th 665, 674.) Morris points to nothing else to substantiate his serious accusation against the trial court.

### 5. Jury as Factfinder

Citing only cases decided in other states, Morris argues that a jury can infer the intent necessary for an intentional tort from circumstances, acts, or conduct. This may be an accurate statement of California law, but it does not save Morris' complaint given the defects discussed *ante*.

### 6. Public Hearing

Morris argues that the trial court failed to ensure a public record and he has a right to a public trial grounded in the historical common law. The trial court's ruling was public, not private. Morris cites no authority to suggest that his right to a public trial, whatever its validity or extent, precluded the trial court from sustaining a demurrer when his complaint failed to state facts sufficient to constitute a cause of action under any theory.

20

## DISPOSITION

The judgment is affirmed.


BROWN, P. J.


WE CONCUR:

GOLDMAN, J.
MOORMAN, J.*


*Morris v. Board of Trustees of the California State University* (A171548)

---

* Judge of the Superior Court of Mendocino County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.